*502 OPINION of the Court, by
Judge Logan
— This is a suit in chancery instituted by the devisees and te-g3j representatives of Nathaniel Hart, dec’d. against Johr\ Hawkins and others, for the recovery of a certain tract of land, upon the following case, to wit.
Qn the 3^ Qf April 1779, Hart and Hawkins entered . i_- r r '* . * int0 a copartnership for the purpose of opening a traae and carrying on business in the mercantile way on the waters of the Ohio ; each stipulating to bring into stork, within a short and given period, one thousand pounds, to be immediately advanced for negroes, horses, or merchandize, as should be thought most advantageous to , ’ 0 0 £££e company .
Oh the 6th of the same month Hart advanced for the use 0f the company 750/. for which H uvkins receipted ; anc^ at £he same time passed his note to Hart for the farther sum of 509/. 16s. And having set out for Kas-on the business of the company, wrote to Hart from thence on the 7th of May, unfavorable to the pros-of trade at that
Nothing farther appears to have passedbetween them unt'^ £'le Ldl °f the same year, when Hawkins having returned to Kentucky, laid out said money in the pur-c]lase 0f two settlements and pre emptions, one from Daniel Turner and the other from Thomas Barton ; the latter of which he exchanged for the settlement and preemption of John Briscoe, which he afterwards located °n the Ohio.
For Barton’s claim he paid 7001. in hand, and passed ^'s note Wlt^ Levi Todd his security for 700/. more, payable on or before the last day of March then ensu-ing. This note Hart discharged,
Hart died in the vear 1782, having duly made his last will and testament, by which his children are all made interested in the whole of his estate real and personal, And on the 8t.h of September 1784, Hawkins wrote county of Hanover, directed to Isaac Shelby
Onetraflbe. tenam*1 ⅝* 'o* tber ihouid recover of the °* much tia£mote than his equal Prpp°nion as ⅛'|,⅛,⅛ the trail fold, which iha11 be aicertamed by the relative value of ihe two ,ttafls> wlth the cmflTíiíng* ° claims.
A deed tfcat “J'f ”Po.“of ground, gives tltle to no Part> Tpúo^uh™
Ixtra judici. alo Proccedings as° conflmaive notice, but ex-pr.els notice ob. pToTetd^swUi operate agamft a p“rch»fcr re-0f notice!
Theconfider. atlon have been paid & the conveyance ex* ccuted to pro. ie& the pur-chafer from a prior equity.
*503 (who had intermarried with one of the heirs of Hart) or in his. absence to the executors of said Hart, informing them of the partnership ; of his having received from their ancestor a sum of paper money for the use of said company j of the failure in the purchase of goods, owing to the depreciation of paper currency in the Illinois country j of his having retained the money until he returned to Harrodsburg, where he laid it out in the purchase of the settlements and pre-emptions aforesaid : and as he had purchased those claims in part with the money of their ancestor, he thought them justly entitled to a moiety of the lands ; and requested, as they were living near the land, and were equally interested in its security, that they would take care of and have it patented*
in the year 1794, Hawkins sold and conveyed the whole of the tract on the Ohio, and having previously sold parts of the other tract lying on Hickman, Hart’s representatives preferred their bill against both Hawkins and the purchasers, to recover the latter tract, alleging that they were purchasers with notice ; and Haw-kiDS having died pending the suit, it was revived against his heirs ms heirs. . . The right of the complainants is asserted upon'two grounds — 1st, As resulting from the nature of the partnership ; 2d, from a subsequent agreement between the partners?
If the complainants have right by virtue of the co-partnership, it is through the operation of‘ a resulting trust: for the partnership was of a mere mercantile nature, relating to trade of a personal quality, and not extended to speculations in land. _
_ It is presumable that Hawkins did not suppose in the purchase of those lands that Hart would necessarily be bound to take part of the purchase, from the firm existing between them, because he procured the transfer of the claims in his own name. But whether he might not have intended that Hart, if he chose, should become a partner, and have afterwards entered into such an agreement with Hart, thereby consenting on his part to let Hart in for an equal benefit of the purchase, and Hart agreeing to waive all demand for the money he iad advanced for the benefit of the copartnership ? r ‘
In making* divifion in iuch cafe it is proper to regard the improvements of the purcha-f?r8 if the proportions can thus he obtain - ed.
This question we shall proceed to examine befdrd we take farther notice of the doctrine in relation, to resulting trusts.
With respect, then, to an agreement and understanding.between the partners upon the subject of this purchase. There is no positive evidence of such a contract. It rests upon circumstances, which it must be conceded ought to be strong indeed, and carry with them the fullest conviction, in order to justify a specific recovery at this distant period. The inquiry then is, will those circumstances produce such conviction ?
Hawkins was in the possession of funds belonging to Hart and himself. He entered into contracts beyond the extent of those funds, and passed his note with Levi Todd his security for a balance of the purchase money payable in a short time. This sum he induced his creditor to believe would be paid by Hart t for the ob-ligee deposeth, that when he sold his claim to Hawkins he understood it was purchased in partnership between Hawkins and Hart; and as a reason for being satisfied that this was the case, states that Hawkins paid one half of the purchase money, and the other half he expected to receive from Hart, which Hart afterwards paid.
Here the inquiry properly arises from whom the witness received the information that this was a purchase in partnership ; and by whom he was referred to Hart for the balance of the payment ? It is not pretended that Hart vvas present. The contrary is clearly infera-ble ; because the note for the residue of the debt which he was expected to pay, was executed by Hawkins and Todd his security, and not signed by Hart. Now, had Hart been present, as the witness expected the payment from him, Hart would certainly have executed the note, or the witness would be able to account for his not doing it. As then, Hart was not present, it would seem, the probable and just conclusion that the witness received his impression from Hawkins, as to a partnership between them ; and that by him he was referred to Hart for the balance of thé payment. He was the purchaser from this witness, and the partner in trade with Hart: in the absence of Hart the witness is induced to expect payment from him, and is impressed with the connection in trade between him and the purchaser of his claim.
*505 Now although Hawkins might not have supposed that Hart was bound from the nature of their partnership to risk his money in a speculation of the kind, and therefore induced to take the transfer of those claims in his own name, nevertheless he might have expected that Hart would consent to become a partner in them, and have intended that he should, if he chose so to do.
Notv that Hawkins intended that Hart should be interested in the purchuAe of those lands, seettls obvious from the following considerations ; 1st, The impression made upon the seller, as already mentioned, of a con* nection in the purchase. 2d, That Barton, the seller, was referred to Hart for payment of the balance of the purchase money, 7001. one half of the consideration stipulated to be given, although at the time Hart Was not indebted to Hawkins, but Hawkins largely indebted to Hart for the sums received in the month of April preceding. 3d, That Hawkins never paid Hart the said sums of money, or appears even to have intimated payment thereof ; and from his letter of 1784, recognizing the justness of a claim in Hart’s heirs to a moiety of those lands. Besides, a strong argument may be drawn from the fact of Hart having paid oif the note for 700/. to shew that Hawkins had not only expected as at first, but thereby recognized Hart as a partner in those lands : for who directed Hart to pay the debt, and why should he have been induced to make the payment? All these circumstances combined, and they must force an impression of the most indubitable stamp upon a mind not hardened against conviction.
And that Hartón his part accepted of the offer, and agreed to become a partner in those lands, is not less obvious ; because he paid the 700/. to Barton in discharge of Hawkins’s note, and because he never pretended a demand for those sums as debts due from Hawkins.
Having then shewn that there must have been an agreement and perfect understanding between Hawkins and Hart as partners of those lands, independent of all right resulting from their original copartnership, it will be only necessary to examine that subject with a view to ascertain whather if Hart could have been entitled under it to any part of those lands, the right would sur-túve to his cotenant ?
*506 The rule in this respect seems to be, that the jus at-cre&cendi or right of survivorship is never allowed, wherever the partnership is for the purposes of trade, or the undertaking ⅛ in the nature of merchand'zing upon the hazard of profit or loss —See 3 P. Wil. 160 — 1 Vern. 217—2 Munf. 387.
The case cited from Munford is very analogous to the one under consideration upon the question of sur-vivorship. That was the case of two partners in a drove of cattle, who having applied part of their drove to a joint purchase of a settlement right to land, one of them died ; the survivor had the land surveyed, and having sold it to a third person with notice, who obtained a grant for the whole tract, upon a bill in equity it was held that the right did not survive, and a decree to one claiming under the heir of the other partner for his share ^f the land.
That case differed from the present only in this ; that was a joint purchase, and so no doubt as to the right of each partner in the land. They concurred in the purchase ; neither could claim the exclusive benefit of the bargain — neither deny his share of the loss. But with respect to the question of survivorship, the cases seem precisely analogous. To suppose Hart jointly concerned in the purchase with Hawkins, then no difference in the cases will exist. It is not therefore material to the interest of the defendants, that Hart should be considered a joint purchaser under the articles of partnership ; since if he were, his right nevertheless would not survive to the copartner, but would descend to his heir or devisees.
While upon the subject of surviving rights between joint tenants, it may not be improper to inquire whether from that source any benefit can be derived to the defendants, from the subsequent agreement between Hawkins and Hart ?
Hawkins derived his right from the assignment of those claims to him, through the agency and act of the claimant transferring them ; and Hart from an agreement of subsequent date between Hawkins and himself: the right of the one being created at one time by one act, and that of the other at a different time by another act. But it is essential to a joii\t tenantcy that it should be created by one and the same act. The unity of ih- *507 terest necessary to constitute joint tenants, would be disregarded were this tobe pronounced a joint tenantcy.
We shall proceed now to an examination of other points in the cause, which have been urged as objections to a recovery. It is contended that the expenses of carrying those claims into grant were entirely defrayed by Hawkins ; that for that purpose he was compelled for want of funds to make sales of the land ; that Hawkins in his letter of 1784, was induced to make a tender of an interest in the lands, to avoid a sacrifice ; and that the failure of the complainants, to conform, ought to exclude their right to the land.
This objection is founded on a mistaken view of fact%, The most-of the surveys were made before, and the others very shortly after the date of the letter from Hawkins to Hart’s representatives ; before the letter could in all probability have reached any of them, anil long before any sales of said lands, were made. For all legal, reasonable or customary expenses, however, nW, cessarily incurred, the complainants, must contribute am equal proportion upon a settlement of accounts.
But in fact it appears that Hawkins had.received nearly, if not fully as much money from Hart as was necessary to defray his equal proportion of the supposed original purchase, expenses for surveying and consummating the titles to said lands. The objection, therefore, seems less entitled to weight than at first it might seem, to merit.
The objection, to the staleness of the demand, arising with the increased value of the lands, is also entitled to less weight than at first view it appears to claim. Suit upon the same right was commenced and decided in the court of the United States, for the Kentucky district,, and ultimately dismissed by the appellate court for want of jurisdiction in the inferior court. This circumstance will in some measure account for a seeming su-pineness on the part of the complainants. But one not less entitled to weight with the chancellor, may be found in the situation and infancy of most of the complainants for many years after the death of their ancestor, as well as in those left with the management of the estate of their testator. The right exists, and a satisfactory apology or excuse for its neglect may measurably be found; in the circumstances mentioned*.
*508 it was argued that the bill of the complainants does not set out a case corresponding with the proof, and that therefore a decree ought not to be pronounced in their favor upon the evidence differing from the allega» tions in the bill.
The bill sets forth a right upon the articles of copart» nership, the application of the funds in the purchase of lands, and the letter of 1/84, as relating back to the purchase and recognizing the right from its origin. The evidence of Barton has relation to the same purchase, and would, was the matter contained in it most specially charged, claim the same decree as that set forth in the bill. It is not necessary to set forth the facts in the mi-nutise qf the evidence — a substantial correspondence is sufficient.
It remains nest to consider what shall be the extent ofi^the recovery of the settlement and pre-emption as assignee of Turner ?
In tjie partition and division of lands among cotenants, it is not necessary that each should receive of the several parcels holden. It is sufficient that the part of each is of equal value, though made up of entire tracts. Now Hawkins having sold and conveyed the whole of one settlement and pre-emption, it follows that the complainants ought to recover of the other tract as much more than their equal proportion as will make up for their part in the tract sold by their cotenant. How much that shall be, must be ascertained by the relative value of the two tracts of land. And the proper measure to be observed in ascertaining that value, has been determined by this court on a similar question, to be with the incumbrances of conflicting claims. The damage sustained by the act is the value of the thing sold ; and that value must measurably depend on the incumbered state of the property from other interfering claims.
Another and perhaps the last branch of this cause for the consideration of the court, is as to the rights of those who claim to be protected as innocent purchasers for a valuable consideration without notice. Two hundred acres bf this settlement and pre-emption was sold by Hawkins to David Crenshaw, and one hundred and thirty acres sold to John Alexander ; both of whom it is contended were purchasers without notice. Each purchased about the year 178/; and Creqshaw states *509 in his answer that he paid down the full price, and re-' ceived a deed for 200 acres, but without describing the lines, courses and distances of the same, which he caused to be recorded.
This deed is not exhibited, but one executed to Cren-shaw bearing date the 16th of June 1798. The former deed it is presumed cannot be expected to influence the decision of the cause, as it is not adduced ; as another has been obtained, and as the former attached to no particular spot, nor was in common, but as he states was to he his choice of the pre-emption. This cannot have vested in Crenshaw the legal title to any part of the land, without which his equity being junior to that of the complainants cannot prevail against their claim. It is not denied in his answer that he had notice before obtaining the deed of 1798 ; he only relies on the proceedings in the federal court as being extra judicial, and therefore as not conveying notice, without denying actual notice. It is true extra judicial proceedings do not operate as constructive notice ; but express notice obtained from such proceedings, as in any other manner, will operate against the right of a purchaser relying on the want of notice. The bill charges the fact of notice before the legal title was acquired ; the fact was in the knowledge of the defendant, and he does not deny the allegation only in reference to the time of his first deed.
Now the law is too clearly settled to be questioned by us, that both the consideration must have been paid and the conveyance executed, to protect the purchase from the prior and therefore superior equity of the complaining party —3 P. Wil. 307— i Atk. 384—2 Atk. 630— . Sug. Law of Vendors 547.
With respect to the purchase of Alexander, his deed was executed in February 1800, and he states in his answer that he paid part of the purchase money at the time of the purchase, and remained in possession of the land without any notice of the complainants’ claim until the institution of the suit in the federal court set forth in the complainants’ bill. The bill alleges that that suit was instituted in 179-. The fact, therefore, of notice prior to February 1800, is evident; and upon the authorities before cited the complainants must recover.
Upon%e whole, therefore, it is the opinion of this court that the complainants are entitled to one equal *510 m0'!ety Qf the settlement and pre-emption on the waters. of Hickman, and as much more as at its value will make up for one half of the settlement and pre-emption on the Ohio, according to its value.
In the division, however, of the Hickman tract, it will be proper to regard the improvements, &c. of the purchasers, if the just proportions can be otherwise obtained in reasonable form.
Decree reversed, and the cause remanded, that a decree conformable to the foregoing opinion may be entered. The appellees to pay to the appellants their costa herein expended.