Parker, C. J.
The demand in this action is for certain flats, situated in the town of Boston, formerly the property of Andrew Dexter. The demandants claim title to the demanded premises under a deed from Daniel Pepoon, bearing date November 10th, 1809 ; Pepoon having, as the demandants allege, acquired the title from Dexter, by a levy thereon, made on the 15th of May preceding, to satisfy a judgment, recovered by him against Dexter, for a large sum, at the April term of the Court of Common Pleas of the same year, in the County of Berkshire, the premises having been attached on mesne process, in the same suit, on the 1st day of February preceding.
The proceedings in the suit of Pepoon vs. Dexter having been regular, and the judgment duly obtained, and the execution seasonably levied; it follows that all the title of Dexter in the premises was *98 legally vested in Pepoon ; so that a deed of bargain and sale, made bona fide and for a valuable consideration, transferred the title to the grantees and authorized them to recover the possession; unless something shown by the tenant, who is in possession, destroys the effect of those proceedings.
[* 107] * It has, therefore, been the object of the tenant, who acquired his title by an extent upon the same flats, in satisfaction of a judgment recovered by him against the President, &c., of the Berkshire Bank; he having made an attachment of the same previous to the execution of the deed from Pepoon to the demandants ; to show, that, at the time of his attachment and levy, the-property in the flats was not in Pepoon, but in the Berkshire Bank. He endeavours to do this by showing that Pepoon was not, in fact, the personal creditor of Dexter, but that he merely represented the Berkshire Bank; the notes, upon which his judgment was rendered, having been given and transferred to Pepoon by way of adjustment of a claim which said bank had against said Dexter; said Pepoon being a director, and one of the agents of said bank for settling and adjusting said claim, and no consideration having passed from him to said Dexter for the said notes, other than the debt due to the said bank.
The facts reported clearly show this to be the situation of Pepoon; it appearing that he, together with John W. Hulbert and Joseph Goodwin, two other directors, were appointed agents of the bank for the purpose of settling with Dexter, and securing the debt due from him ; and that the notes, upon which the judgment is founded, were made to the agents, and finally indorsed to Pepoon, with a view to facilitate such proceedings as should be necessary for the security of the bank.
Upon these facts the tenant has insisted, that, although the legal estate in the land demanded may have passed to Pepoon in his private capacity ; yet, as the consideration passed from the bank, and as Pepoon avowedly conducted as their agent, the property, by way of use or trust, immediately upon the levy by Pepoon, became vested in the bank ; so that either it has become legally transferrsd to the tenant by his levy upon it, as their property ; or, at least, that no person holding the legal estate under the trustee can disturb him who has acquired a possession by a levy upon it, as the property of the cestui que trust.
[*108] * Whatever may be the equity of this case, as it respects the tenant, who made use of all possible diligence to secure his debt from the corporation, for whose benefit the transactions between Pepoon and Dexter undoubtedly took place ; there seems to be an unavoidable difficulty in establishing his claim upon legal principles ; and there is no power in this Court to adopt or enforce the rules of chancery, with any other view than to illustrate th* *99 principles of the common law. Were it possible to consider the estate made by the levy in Pepoon as made to the use, technically considered, of the Berkshire Bank, the way would be clear ; because then, by the statute of uses, the legal estate is immediately transferred to the cestui que use; and the levy made by the tenant upon the flats, as the property of the bank, would have established his title under that corporation.† But, there being no use expressed in the record of the proceedings, which vested the legal estate in Pepoon, and no evidence, except hy paroi, that any use was intended, except what is legally implied to the purchaser, who is, by the record, the creditor for whose debt the judgment was rendered and the execution levied, it has been found, by the counsel for the tenant, impossible to support his claim upon this ground ; and it has been, therefore, properly abandoned.
Nor is it more easy to maintain the second position advanced by the tenant, namely, that the estate in Pepoon must be considered in trust for the Berkshire Bank. For, by our statute, regulating the transfer and conveyance of real estate, no trust shall be considered as existing, except such as result from implication of law, unless it is manifested by some writing, signed by the party who holds the legal estate ; and we cannot consider the condition of the deed, made by Pepoon to the demandants, as a declaration of trust, it being lawful, and not uncommon, for, one to mortgage his estate for the security of a debt due from another.
Nor can it be considered a resulting trust, arising by implication or construction of law, within the exception of the statute, as has been urged in the argument of the counsel; *be- [*109] cause the levy by Pepoon, under the judgment and execution, appearing of record to be in his personal capacity, the law vests the estate in him as absolutely as if he had taken a deed of conveyance from the owner, upon a consideration expressed to have been paid by himself. And although there are some cases, which were referred to in the argument, where in the court of chancery in England it has been determined, since the statute of frauds, that, if one man purchases lands in the name of another, and pays the money, a trust results to him who paid the money, which is not affected by the statute ; yet that must always be understood to be in cases where the paroi evidence is not inconsistent with the deed (1). In the case of Ambrose vs. Ambrose (2), where it appeared, that the purchase-money paid was the proper money of A., but mentioned in the deed-to have been paid by B., Lord Chancellor Cowper said, had it not been for the *100 statute of frauds, this would have made a resulting trust for A. And B., after the death of A., having executed a declaration of the trust, this took it out of the statute. Here it was considered that a written declaration of the trust was necessary to take it out of the statute.†
But, if we could consider this case as creating an equitable trust, it would not avail any thing in the defence ; unless we also consider, that, because we have no court of chancery to enforce a trust, it is tantamount to a legal use. And, if we suppose it to be a legal use, it must of consequence be subject to all those principles and rules which are applicable to uses ; and it is very clear, that, by our statute, as well as by the statute of frauds in England, no use can be created or transferred without deed or writing. In the case of Lamplugh vs. Lamplugh (3), Lord Chancellor Cowper says, that the proviso in the statute of frauds, “ that all conveyances, where trusts and confidences shall arise or result by implication of law, shall be as if that act had never been,” must relate to trusts and equitable interests, and cannot relate to a use, which is a legal estate. If a [*110] trust * could be raised by implication of law, without writing, as was contended in the argument of this case, and that trust be converted into a legal use, all the beneficial effects of our statute regulating the conveyance of real»estate, and requiring deeds to be registered, might be easily evaded, and the statute made useless. But the principles to be found in the English authorities are directly opposed to such a construction of our statute ; and we see no reason for admitting it.
The tenant, therefore, must be considered as in possession wholly without title ; and the remaining question, suggested by him, is, whether such a title is proved in the demandants, as will enable them to disturb his possession, and recover the demanded premises out of his hands.
And upon this point it is said, first, that the transactions between Dexter and Pepoon were of a nature to make the conveyance by the levy fraudulent, as respects creditors, and so void. And this is inferred fi’om the evidence in the case, tending to show that the object of the agents, in shifting the debt so that it should stand in the name of Pepoon, was, to conceal from the public that Dexter was so large a debtor to the bank, and thus to continue their credit with the community.
*101 It would, perhaps, be a sufficient answer to this objection to the title of the demandants, that the fraud suggested is matter of fact ; and, as far as the verdict of the jury may be considered as touching this point, it has been negatived. But still, as the verdict seems to have been given with a view to establish a distinct fact, and as the minds of the jury were not called to a consideration of the suggestion of fraud ; if the facts reported will warrant such an imputation upon the transaction, there ought to be a new trial ; provided the cause would turn upon this point.
We are, however, of opinion, that there is no ground to infer a fraud from the evidence exhibited in the case. Fraud, which vitiates conveyances, consists, generally, in an intention to secure, by the conveyance, some interest in the property to the grantor, or some future right in it; or in an * unjust preference [*111] of one creditor to another in violation of the bankrupt' laws. Nothing of the kind is proved here. The Berkshire Bank was the bona, fide creditor of Dexter ; he bad a right, by the laws of this State, to prefer them to any other creditor ; and the conveyance by him to Pepoon, at their request and for their convenience, even if for the purpose suggested, of concealing from the public that so much of their capital had been trusted to one man, and he a bankrupt, could in no way be construed fraudulent. It might be, and probably was, a prudent measure, to recover from an imprudent negotiation ; and, instead of injuring, might have been of advantage to the creditors of the bank, by enabling them to adjust their concerns, before any alarm had spread.
It has also been suggested, that, as, subsequent to the attachment made by Pepoon, Dexter made his deed of quitclaim of the premises to Hulbert, Goodwin, and Pepoon, which was duly acknowledged and recorded, there was no interest in Dexter at the time of Pepoon’s levy, so that nothing passed to him by it, and that, at most, he could recover but a third part in common of what passed by the deed.
But we do not see that his deed has any effect upon the levy. It was probably intended to extinguish any future claim of Dexter ; but, being a naked release, it passed nothing to the releasees, at least until they entered and took possession under it. It may be considered, as it was probably intended, merely in aid of the title to be acquired under the levy, and a relinquishment of the right to redeem, so as to give an absolute right to sell as soon as the levy should be made.
It was also insisted, as an agreement had been entered into by the President of the JSTorthampton Bank, when receiving the deed from Pepoon relative to the bills of the Berkshire Bank, which agreement does not appear to have been performed, that therefore the conveyance was void.
*102 [*112] * But this was merely a collateral agreement, not affecting the title ; and which none but the parties interested can take advantage of.
The knowledge of the Northampton Bank does not prejudice their title. It was thought by their agent, that the title was vested in the Berkshire Bank, and they attached upon that belief. They after-, wards discovered their mistake, and, finding where the legal title was, have secured it to themselves.†

Judgment according to the verdict.

 Marshall vs Fisk, 6 Mass. Rep. 24.—Newall vs. Wheeler, 7 Mass. Rep. 189. — Cox et al. vs. Edwards, 14 Mass. Rep. 491. — Prescott vs. Tarbell, 1 Mass. Rep. 204.

 Bac. Abr., Tit Uses and Trusts, C.

 1 P. Will. 323.

 Goodwin vs. Hubbard, 15 Mass. Rep. 210. — Jenny vs. Alden, post, 375. — Stone vs. Batson, 8 Mass. Rep. 431. — Smith vs. Lane, 3 Pick. 205. — Sed vide Young vs. Peachy, 2 Atk. 256. — Rider vs. Kidder, 10 Ves. 360. A trust by implication of law is not within the statute of frauds. Stark vs. Canady, 3 Lit. 399. — Boyd vs. M'Lean, 1 Johns. Ch. R. 582.— Bottsford vs. Burr, 2 Johns. Ch. R. 409. — Livingston vs. Kingston, 2 Johns. Ch. R. 540. — Snelling vs. Utterback, 1 Bibb, 609. — Stephenson vs. Slephenson, 3 Bibb, 15.— Hart vs. Hawkins, 3 Bibb, 506.— Dealtry's Heirs vs. Murphy, 3 Marsh. 477. — Perry vs Head, 1 Marsh. 47.

 1 P. Will. 112.

 Russel vs. Lewis, 3 Pick. 508.