Howe *v.* Ward.

*New trial granted.*

## HOWE *vs.* WARD.

If a conveyance is made by one who is insolvent, even upon a good and sufficient consideration advanced to him, but not *bona fide,* and the purchaser is conusant of and assenting to the fraudulent intent, it is void against creditors.

A voluntary conveyance, without consideration, is good against subsequent credi-tors, if made by one who is solvent, and without any fraudulent intent ; but is void against creditors existing at the time of the conveyance, if the grantor be insolvent at the time.

And the want of consideration, and the insolvency of the grantor, are badges or *indicia* of fraud or trust between the parties, which, under some circumstances may render the conveyance void against even subsequent creditors.

A voluntary conveyance, without consideration, whether the grantor be insolvent or not, is void against subsequent creditors, if such conveyance was made for the purpose of defrauding them " of their just and lawful actions," &c.

The relation of debtor **and** creditor among the sureties in a bond, so as to entitle one of them to impeach a voluntary conveyance made by another, commences at the time of executing the bond ; and not at the time when one actually pays more than his proportion of the debt.

| 4 | 195 |
| 86 | 412 |
| 4 | 195 |
| 95 | 460 |

In this case, which was an action of trespass *quare clausum fregit,* the defendant justified under an extent made upon the *locus in quo* *July* 16, 1824, as the property of one *Waterhouse* ; and the plain-

tiff claimed the land by virtue of a deed from *Waterhouse* to him, dated *April* 5, 1823, subsequent to which time *Waterhouse* had continued to occupy the land as his tenant. This conveyance the defendant sought to impeach, on the ground of fraud.

At the trial, before *Preble J.* at the last *November* term, it appeared on the part of the defendant, that on the 13th day of *September* 1821 one *James March,* being appointed a deputy sheriff, gave bond to the sheriff, in which *Ward* and *Waterhouse,* with two others, were sureties ;—that *March* died insolvent about the first of *April* 1823 ;—that the sheriff sued this bond against the sureties, and recovered judgment at *March* term 1824, by default, for the penalty, with an award of execution for $377,06. This execution was fully paid by *Ward, May* 14, 1824. The sum for which it was awarded was composed of the sheriff's proportion of fees, accrued from the date of the bond to the time of *March's* death; together with the amount of a judgment which one *Washburn* recovered at the same term, against the sheriff, for *March's* neglect in not paying over moneys he had collected on an execution in favor of *Washburn,* which was issued after *October* term 1821, and was returnable in *January* 1822 ; prior to which time *March* had received the money.

*Ward* sued *Waterhouse May* 18, 1824, for his proportion of the money thus paid to the sheriff ; and having recovered judgment by default, extended his execution on the *locus in quo,* and proceeded soon after to cut the hay. The officer's return described the appraisers as " three disinterested men, freeholders of said " county" ; without certifying that they were " disinterested " *and discreet* men, being freeholders" &c. in the words of the statute.

The bond given by *March* to the sheriff, upon his appointment to the office of deputy sheriff, was conditioned, among other things, that he should " refuse to accept or hold the office of constable " of any town within said county of Cumberland."[1]

Upon this evidence the plaintiff's counsel, at the proper stages of the cause, objected ; 1st—That *Ward* had no right to impeach the conveyance from *Waterhouse* to the plaintiff, because, at that time, he was not a creditor ; 2d—That the bond to the sheriff

Howe *v.* Ward.

was an illegal bond, and could not be enforced at law, as it restrained the deputy from serving in the office of constable, which the statute made it his duty to do, if elected; 3d—That the levy of *Ward's* execution against *Waterhouse* was void, because it did not appear that the appraisers were " *discreet*" men, as well as disinterested, and freeholders.

These objections the Judge overruled, in order to try the principal questions of fact ; and permitted the defendant to offer evidence to prove that the conveyance by *Waterhouse* to the plaintiff, was made for the purpose of putting the property out of the reach of the sheriff, in any suit upon the bond ; of which the plaintiff was conusant ; and that it therefore was in law fraudulent and void. And upon this point, after hearing evidence on both sides, the jury returned a verdict for the defendant ; which was taken subject to the opinion of the court upon the points made by the plaintiff at the trial.

*Greenleaf* and *Frost* argued for the plaintiff ; 1st—That to entitle the defendant to impeach the conveyance for legal fraud, it must appear that he was a creditor at the time it was made ; and a surety has not the character of a creditor till the rendition of judgment against him.   *Fales v. Thompson* 1 *Mass.* 134.   1 *Dane's Abr.* 628, *sec.* 20.

2.   The bond from *March* to the sheriff was illegal, because it was conditioned to refuse an office which the statute of 1821 *ch.* 116, made it the duty of every citizen to accept, under a penalty enacted against his refusal to take the oath of office.   For where a duty is prescribed by statute, a bond conditioned to omit it is wholly void, even though it contain other conditions which, if standing alone, would be good.   5 *Vin. Abr.* 98, *Condition Y. pl.* 7, 8, *Guppy v. Jennings* 1 *Anstr.* 256.   *Wheeler v. Russell* 17 *Mass.* 258. *Layng v. Paine Willes* 571.   3 *Bac. Abr.* 703—705. *tit. Obligation.*

3.   The extent was void, because it does not appear that the appraisers were " discreet" men.   The statute requires that they should be not only " disinterested," or free from bias,  and " freeholders," practically acquainted with real estate ; but "dis- " creet" men; that is, men capable of discerning its true value ; and not imbecile of judgment.   Each of these qualifications is

made indispensably necessary in an appraiser ; and every thing made necessary by statute, must appear in the officer's return. *Williams v. Amory* 14 *Mass.* 20, 29. *Eddy v. Knapp* 2 *Mass.* 154. *Ladd v. Blunt* 4 *Mass.* 402. A creditor claiming under this sort of involuntary conveyance, must shew a strict compliance with every statutory provision. *Waterhouse v. Waite* 11 *Mass.* 207. *Bott v. Burrell* 11 *Mass.* 163. *Tate v. Anderson* 9 *Mass.* 92. *Allen v. Thayer* 17 *Mass.* 299. And of this defect even a stranger may take advantage, the extent being merely void. 7 *Bac. Abr.* 68, *tit. Void & Voidable F.*

*Longfellow* and *Adams*, for the defendant, replied to the first point, that the plaintiff's deed, being found to be fraudulent, was void as well against subsequent as prior creditors. The principle contended for by the plaintiff applies only to voluntary conveyances, and not to those which are fraudulent. *Damon v. Bryant* 2 *Pick.* 411. *Roberts Fraud. Conv.* 17, 27, 521, 522. And if it were not so, yet the defendant was a creditor at the time of the conveyance, the condition of the bond being then broken, and the rights of all parties fixed.

To the second point they said, that the statute of this State could not be construed imperatively to require the acceptance of any town office; but was rather to be understood as conferring the privilege to accept or to waive it ; and that this objection was not open to the plaintiff, he being a stranger to the contract, and his title illegal.

The third objection, they also insisted, the plaintiff was not entitled to take, for the same reasons. *Dagget v. Adams* 1 *Greenl.* 198. *Lawrence v. Pond* 17 *Mass.* 433. *Williams v. Amory* 14 *Mass.* 20. *Barret v. Porter ib.* 143. *Atkins v. Bean & al. ib.* 408. Nor can the objection be sustained ; for the law presumes every man discreet, till the contrary appears.

MELLEN C. J. delivered the opinion of the court, at the ensuing *November* term, as follows.

In this case the plaintiff claims title to the *locus in quo* under a deed from *Waterhouse* to him, bearing date *April* 5, 1823 ; and the defendant claims title to it in virtue of the levy of his execu-

tion thereon, as the property of said *Waterhouse* on the 16th of July 1824. If, as against *Ward*, the close passed by the deed to the plaintiff, then the objections to the bond and the levy are of no importance, as the conveyance was prior to the levy. If, as against *Ward*, the deed was fraudulent and void, then the plaintiff has no title to maintain the present action for merely taking hay from the premises in question, although, at the time of the levy, *Waterhouse* occupied the same as tenant of the plaintiff; such an act of trespass being an injury to the tenant, and not to the landlord, as was decided by this court in the case of *Little v. Palister* 3 *Greenl.* 6. These objections may therefore be laid out of the case ; and the only question for consideration is, whether *Ward*, at the time the deed was given, was such a creditor of *Waterhouse*, or was so situated in relation to that conveyance or is so affected by it, as that he is thereby entitled to contest its operation, by shewing that it was in its origin fraudulent, and made with intent to defeat the rights of creditors. Upon the evidence which was admitted to the jury, for the purpose of shewing that such was the character and design of the deed, they returned their verdict in favor of the defendant. Was the proof properly admitted? The main question presented in this cause is worthy of consideration, in two points of view. The first inquiry is whether *Ward* may be considered as having been a creditor of *Waterhouse*, at the time the deed was executed ; and the second is, whether the deed was made under such circumstances, and with such fraudulent intentions, as to be void with respect to *Ward*, if not then a creditor by virtue of the statute of 13 *Eliz. ch.* 5, which has been adopted here as common law.

The consideration of the first point leads us to the examination of some of the peculiar rights and liabilities of sureties. So far as the obligee of a bond, or promisee of a note, is concerned, the principal and sureties are each and all equally liable ; but as between or among themselves, each surety is liable only for his proportion ; and such proportion will depend on the number of sureties, in case none of them prove to be insolvent or negligent. What then is the legal relation in which one of the sureties stands to each of the others? The answer is, at the time of

executing an instrument by several persons as sureties, each one impliedly promises all the others, that he will faithfully perform his part of the contract, and pay his proportion of loss arising from the total or partial insolvency of the principal, and to indemnify them against any damages by reason of his neglecting so to do. A similar promise is implied on the part of the principal, to indemnify and save harmless each of the sureties. This promise, in both cases, is conditional in its nature. The principal may remain solvent, and punctually pay the debt; and, again, in case of the failure on the part of the principal to pay, each surety may honestly pay his due proportion. It is a promise which may never be broken; but it is binding until broken or performed. In this respect, such a promise resembles that by which a man binds himself to pay a certain sum of money at a future day; here a debt exists *in presenti* though payable *in futuro*. The debt exists long before a right of action accrues for its recovery. There is no question as to the right of a creditor, whose debt is payable at a future day, by the express terms of the contract, lawfully to impeach a conveyance as fraudulent, made by his debtor after contracting the debt; because though he cannot maintain an action on the contract, until it shall have been violated by nonpayment at the day; still he has an interest in the property conveyed, as a fund out of which the debt ought to be paid; and may therefore shew, if he can, that the debtor has conveyed it away fraudulently to defeat his rights. Now can there be any sound distinction between such a contract, and the implied contract, which in case of suretyship exists between the principal and the sureties, and between each surety and all the others? The case of *Mountford v. Ranie* Keb. 499, is not inapplicable to the case before us. One *G.* had given a bond to Sir *John Lenthall,* who was sheriff and lessor of the plaintiff; he obtained a judgment on *scire facias* against the heir and tertenants, claiming under the ancestor and obligor. The defendant set up a settlement by recovery to the use of trustees for sixty years, subject to the disposition of the grantor, which conveyance was made fourteen years before the ancestor became bound as security for the prisoner who had escaped; *Kelyng C. J.* and *Rainsford J.* firmly

Howe *v.* Ward.

agreed, as the reporter says, in pronouncing the conveyance fraudulent, although the plaintiff had only become a creditor by the escape of the prisoner ; and so instructed the jury. *Twydsen J. contra.* *Roberts*, in his treatise on the construction of the 13th & 27th of *Elizabeth*, says, in page 549, that there is a distinction between demands fundamentally originating after a conveyance by way of family settlement, or provision, or advancement, and such as arise upon an obligation prior in date to the conveyance, with a condition to perform some collateral act ; for it cannot be said that an obligor in a bond, before the pecuniary demand arises by its forfeiture, can be ignorant of his liability or danger, so as to exempt him from the imputation of fraudulent intent upon the statute ; and that whether the person making such voluntary settlement be principal, or only a surety in the bond, can make no difference in such view. In the case before us, it appears that the bond in question was signed *Sept.* 13, 1821, *Ward* and *Waterhouse* being two of the sureties ; and that *March*, the principal, died insolvent about the first of *April* 1823. Of course he was insolvent before the deed was given ; and the sureties were then placed in a situation in which they were absolutely liable to pay all eventual losses occasioned by the conduct and insolvency of *March*. At that moment each surety was absolutely bound to bear and pay his share of such losses ; and yet in these circumstances, *Waterhouse* conveyed to the plaintiff the land in question. The circumstances in which sureties stand in relation to the principal, and to each other, seem to distinguish their claims from ordinary demands. There is a perfect understanding among them that they are all embarked in a common cause by common consent; and this understanding amounts in law to an implied promise of indemnity by each to all ; and, for the purpose of the present argument, such implied promise is equal to a bond given by each surety to all the others, and by the principal to all ; *conditioned* that the obligor will faithfully pay his proportion of any eventual loss, and effectually protect them from all damage on account of his negligence or failure. Such a bond would surely constitute the obligees creditors of the obligor, so far as to entitle them to impeach any of his subsequent conveyances on the ground of fraud.

The present question seems different from that which has often been made and decided, as to the time when a surety can prove his demand on the principal before the commissioners, in case of the bankruptcy of such principal. It is settled that in such a case, the surety has no right of action on an implied promise against the principal, until he himself has paid or absolutely assumed the debt as his own. 1 *Dane's Abr.* 195, 196. 3 *Wils.* 13. *Chilton v. Whiffin.* *Cowp.* 525. *Taylor v. Mills & al. Dougl.* 160. *Alsop & al. v. Price.* Though if the debt be absolutely due, and payable *in futuro,* it may be proved under the commission before the day of payment. The question now before us is, whether the defendant, at the time the deed was given to the plaintiff, was a creditor of such description, and so situated, as to be entitled to contest the deed, and shew it to have been made for the fraudulent purposes before named. It may be further suggested as an argument in favor of the view which we have taken, that if a co-surety or co-obligor cannot be legally considered as a creditor, so far as to impeach a fraudulent conveyance made by another co-surety or co-obligor, for the purpose of securing his property from all liability to contribution, the consequence will be that any such co-surety or co-obligor may completely shelter his property, and place it beyond the reach of process, and thus leave such as shall have paid the whole debt, or more than their just proportion, destitute of all remedy against him as to his estate thus fraudulently conveyed. Such a consequence is not to be disregarded, nor a principle leading to such a consequence to be respected in a court of justice. It would defeat the very design of suretyship, by rendering it, to a certain extent, useless or dangerous.

The consideration of the second point renders it necessary to examine the before mentioned chapter of the 13th of *Elizabeth,* and ascertain the extent of its provisions, and the construction which it ought to receive. It is believed that the language of the section is broader and more comprehensive than the construction which the courts of Massachusetts have generally given to it, or than has been usually, in practice, considered as the true one, in the trial of causes in this State. This idea seems to have been

entertained and often expressed by the court, sometimes directly and sometimes incidentally, as may be seen in the case of *North-ampton Bank v. Whiting* 12 *Mass.* 110. *Brooks v. Powers* 15 *Mass.* 247. *Quincy v. Hall* 1 *Pick.* 357, and *Badlam v. Tucker & al. ib.* 389. It has long been a received opinion that no man could legally be permitted to impeach a conveyance as voluntary or fraudulent, unless he was a creditor of the person who made the conveyance at the time it was made. Voluntary and fraudulent conveyances have not been sufficiently distinguished.

In our common actions of replevin, where questions as to the validity of the sale of chattels are daily tried ; and in real actions between creditors claiming under executions levied on debtors' lands, and persons claiming the same lands under the debtors' deeds made prior to such levies, it has been the common practice to call on the person who contests the fairness and validity of the sale, to prove, in the first place, that he was a creditor of the alleged fraudulent vendor, or grantor, at the time of sale; and this principle and practice seem to have been founded on the idea that unless this fact appeared, he could have no interest in the inquiry ; that as against him the sale was good at the time it was made ; and that he could not afterwards acquire the right to impeach such a conveyance.

The correctness of the above principle has been often doubted in some of our courts of law ; and this court is called upon, in the cause before us, to examine this question, and pronounce an opinion, whether the principle and practice above mentioned are in conformity to the language and true intent and meaning of the 5th *ch.* of the 13th of *Elizabeth.* By this statute, " every feoff- " ment, gift, grant, alienation, bargain, and conveyance of lands, " tenements and hereditaments, goods and chattels or any of them" by writing or otherwise, " that had been or afterwards should be" had or made to or for any intent or purpose—" to delay, hinder " or defraud creditors or others of their just and lawful actions, " suits, debts, accounts, damages, penalties, forfeitures" &c. is declared to be " clearly and utterly void, frustrate and of " no effect ; any pretence, colour, feigned consideration, ex- " pressing of use, or any other matter or thing to the contrary

"notwithstanding." A proviso follows, which need not now be noticed. In *Cadogan v. Kennet Cowp.* 432, Lord *Mansfield* says, " The rules and principles of the common law, as now univer- " sally known and understood, are so strong against fraud in every " shape, that the common law would have attained every end " proposed by the statutes of the 13th and 27th of *Elizabeth*; " these statutes cannot receive too liberal a construction, or be " too much extended in suppression of fraud." Still, at com-mon law, a fraudulent conveyance could be avoided only by him who had a "former right, title, interest, debt on demand." *Twyne's case 3 Co.* 80. *Roberts on Fraud. Conv.* 13 says that " the first expounders of the statutes of *Elizabeth* against fraud- " ulent conveyances have given them a very strong construction " against voluntary dispositions; and particularly the statute " made for the protection of creditors, they have understood in " a sense correspondent to the probable intention of the makers, " to supply the defect of the common law and of former statutes, " where they fell short of relieving those whose debts had arisen " subsequently to the fraudulent alienation." In *Taylor v. Jones 2 Atk.* 601, Lord *Hardwicke* observed upon the words in the 13 *Eliz.* "to defraud creditors and others," that the word " others" seemed to have been inserted to take in all manner of persons; as well creditors after, as before, the conveyance, whose debts should be defrauded. Even voluntary family settlements, which the law appears to favour more than any other species of convey-ance, though made by one not indebted, are not always safe against subsequent creditors. In *Walker v. Burrows* 1 *Atk.* 94, Lord *Hardwicke* said that to impeach such a conveyance, it was neces-sary to prove that the person conveying was indebted at the time of making the settlement, or immediately after the execution of the deed. In *Stileman v. Ashdown 2 Atk.* 481, it was decided that a settlement upon children, even though made by a person not indebted at the time, might be void as against subsequent cred-itors, if any thing in the transaction afforded ground for an infer-ence that the provisions were made with a view to becoming indebted. In the case of Lord *Townsend v. Wyndham 2 Ves.* 10, Lord *Hardwicke* says, " if there is a voluntary conveyance of

real estate, or chattel interest, by one not indebted at the time, though he afterwards becomes indebted, and that voluntary conveyance is for a child, and without any particular badge or evidence of fraud to defraud subsequent creditors, that will be good; but if any mark of collusion, or fraud, or intent to deceive, or defraud subsequent creditors appears, that will make it void, though he afterwards becomes indebted." In the case of *Fitzer v. Fitzer* 2 *Atk.* 511, the debt of the creditor arose subsequent to the voluntary settlement. The cases of *Fin v. Hills* 1 *Con. Rep.* 295, and *Jackson v. Myers* 18 *Johns* 425, and *Jackson v. Swann ib.* in note, are founded on the principles above stated. See also *Hinde's lessee v. Longworth* 11 *Wheat.* 199, and *Sexton v. Wheaton* 8 *Wheat.* 229. In each of the two former cases, property had been conveyed by a person against whom judgment was recovered in an action for a tort ; in both cases the property was conveyed after the cause of action, and before judgment was recovered; but the court set aside the conveyances as fraudulent, and against the provisions of the acts in the respective States, similar to the above mentioned statute of *Elizabeth.* The same principle is recognized by the court in *Jackson v. Ham* 15 *Johns.* 261. *Newland,* in his treatise on contracts, page 389, says that the deeds which are avoided by the statute of the 13th *Eliz.* are void as well against those creditors whose debts were contracted subsequently to such deeds, as against those creditors whose debts were in existence at the execution of the deeds. In *Lush v. Wilkinson* 5 *Ves.* 384, Lord *Alvanly* says, that to impeach a voluntary settlement, made on a meritorious consideration, it seems necessary that the person making it should be insolvent at the time; a single debt would not do ; it must depend on this, whether he was in insolvent circumstances at the time. " The opinion of courts of equity appears to be that the consideration of natural love and affection is a good consideration, " within the proviso of the statute, and sufficient to support a " deed against creditors, unless from other circumstances it can " be shewn to be *mala fide. Newland* 386. This is agreeable to the opinion of Lord *Hardwicke* before mentioned, in the case of *Townsend v. Wyndham.*

Mr. *Dane*, in his learned Abridgment, *Vol.* 1, page 668, lays down the position that one insolvent cannot make voluntary conveyances or settlements ; that is, for love and affection ; and in support of the position cites a long catalogue of decisions.; several of which have been mentioned in the course of this opinion ; among others he states the above case of *Lush v. Wilkinson* 5 *Ves.* 384, *Ambler* 121. 1 *Ves.* 27. 2 *Ves.* 11. 1 *Atk.* 93. 2 *Bro. C. C.* 90. 1 *Dane* 669. He also lays down the other principle, that deeds avoided by the 13 *Elizabeth* are also void against subsequent creditors, in those cases where the debtor or person making the deed is insolvent. Then he says, perhaps a voluntary conveyance may be deemed to have respect to them, and made with intent to defraud them. On this head he observes that according to our decisions, one becoming a creditor after a voluntary conveyance is made and known, has no right to complain of it. He refers to *Adams v. Adams, Essex Nov. Term* 1796, and *Parker v. Procter* 9 *Mass.* 390, and considers them the best decisions; and then adds " there may however " be an exception, as where the deed is unrecorded and unknown " to him, or actually made with a design to affect after credi- " tors." In such a case the principle of the English decisions is the one applicable here. This seems to be the true and solid ground. Unless the principle is extended thus far, cases of the most gross fraud may exist and yet not be within the statute. For instance, suppose *D.* a man possessed of property real or personal, of the value of a thousand dollars, and of which he is the undisputed owner, to day makes a voluntary conveyance of the same to *A.* with the express intent to purchase goods or real property of *B.* and defraud him of the value, by means of this artifice; and tomorrow makes the contemplated purchase; all of which arrangement is known to *A*; surely, in such a case, *B* may be permitted to contest, and by proof defeat this sale to *A*, although, at the time of the conveyance to *A*, *B* was not a creditor of *D.* He may do this, because the very purpose of the plan was to cheat *B*, a subsequent creditor. The supposed case is clearly within the reason and scope of the statute; and not against any of its language. It is in harmony with the numerous decisions

in the English courts upon the point ; and although the doctrine seems not to have been so clearly defined and so liberally applied in practice in the courts of Massachusetts, and of this State, hitherto, (as has been before intimated,) yet there is no case, in the reports of either State, by which this extended application of the salutary provisions of the statute is forbidden ; on the contrary, the Supreme court of Massachusetts have given a clear intimation of an opinion entertained on the subject, as we perceive in the case of *Damon v. Bryant* 2 *Pick.* 411. This court cannot doubt that the cause of truth and justice would be aided by extending the construction, defining the principles, and at the same time giving the intended effect to the statute in question, in the manner before mentioned. Thus frauds would be more easily detected, and guarded against more effectually, than under the limited construction which has so long governed our courts in practice. No possible danger can result from the extension of the principle as proposed; as it goes no further than to permit the introduction of proof to the jury, for the purpose of impeaching a conveyance on the ground of fraud ; and if the party for whose benefit the proof is introduced, was not a creditor at the time the alleged fraudulent conveyance was made, such proof cannot avail him, unless found sufficient to convince the jury that the conveyance was made for the purpose of defrauding him in particular, or subsequent creditors generally, as well as those who were creditors at the time, if there were any such. From the foregoing principles, established or recognized in the cases we have stated, as well as from numerous others relating to the same subject, the following propositions may be deduced; and it may not be useless or unacceptable to present them all in one view.

1.—If a conveyance is made by a man who is insolvent, upon a good and sufficient consideration advanced to him, but not *bona fide* ; and the purchaser is conusant of and assenting to the fraudulent intent ; it is void against creditors.

2.—A voluntary conveyance, made without consideration, by a man who is solvent, and without any fraudulent intent, is good against subsequent creditors.

3.—A voluntary conveyance, made without any consideration, by a man who is insolvent, is void against creditors existing at the time of the conveyance.

4.—A voluntary conveyance made without consideration by a man insolvent, may, on that very account, be deemed fraudulent, even as against subsequent creditors; at least that circumstance is a badge or *indicium* of fraud or trust between the parties, which may lead to that conclusion.

5.—A voluntary conveyance, made without consideration by a man, whether insolvent or not, is void against subsequent creditors, if such conveyance was made for the purpose of defrauding them " of their just and lawful actions, suits, debts, accounts, " damages, penalties, forfeitures, &c."

In all the foregoing cases, the questions of insolvency and intention are before the jury. And now having taken this review of those principles of law which relate to fraudulent conveyances, we recur to an important fact in the report of the Judge, viz. that he " permitted the defendant to offer evidence that the "conveyance by *Waterhouse* to the plaintiff, was made with the "knowledge of the plaintiff, for the purpose of putting said prop- " erty out of the reach of the sheriff in any suit upon the bond " aforesaid." And upon the evidence thus introduced, which we must presume was applicable to the several facts necessary to bring the case within the 13th of *Elizabeth*, the jury decided that the deed was fraudulent and void, on the grounds upon which the cause was submitted to them. The fraudulent intention of putting the property out of the reach of the sheriff in any suit upon the bond, included the intention of defrauding the defendant, by preventing him from obtaining any indemnity from *Waterhouse*, for any loss he might sustain by being compelled to pay more than his, the defendant's, share in consequence of his suretyship.

We conclude this opinion, which is the result of laborious investigation, by saying that we all agree that the evidence objected to was properly admitted to the jury ; and that accordingly there must be　　　　　　　　　*Judgment on the verdict.*