M. J. McGahan and others v. W. K. Baylor and another.

1—A grant to the "heirs" of a decedent, made in Texas in 1827, could enure only to such persons as were heirs according to the civil law, then in force here; and persons who, although heirs according to the common law, were then domiciliated in the United States, and therefore incapable of then taking land in this country by inheritance, could acquire no title under such a grant. The cases of Yates v. Iams, 10 Tex., 168, and Holliman v. Peebles, 1 Tex., 673, cited by the court.

2—The rule that a joint tenant or tenant in common can not convey part of the land by metes and bounds, is subject to qualifications founded on equity and good conscience. A purchaser by metes and bounds from such a tenant will be protected so far as is consistent with the rights of the co-tenants of the vendor.

Appeal from Fayette. Tried below before Hon George W. Smith.

A full history of this case would present a case of considerable complication. The material facts are either expressly stated or clearly implied in the opinion of the court. The conveyance by William M. Baylor to the heirs of William Alley, made in 1843, and conveying all of the Alley league except 500 acres, was the result of a compromise entered into by him with John Alley, who, professing to act for the other heirs of William Alley, as well as for himself, made a deed to William M. Baylor for the five hundred acres not comprised in Baylor's deed.

In October, 1856, the present appellees, Walker K. and William Baylor, claiming these 500 acres under deeds from William M. Baylor, their father, instituted a suit to quiet their

title; and in November, 1857, recovered a judgment, which was taken by error to this court, and here affirmed at the session of 1859. (See Hill v. Baylor, 23 Tex. Rep., 261.)

In August, 1859, the appellants, Mary Jane McGahan, joined by her husband, and by the other heirs of Mary Hill, a daughter of William Alley, deceased, brought the present suit for the purpose of having the judgment recovered by the Baylors reviewed and vacated. In their petition they allege many reasons, some going to the service by publication had in the former suit, and others to the form of the judgment and want of a proper record, etc., etc. As these matters, however, are not discussed in the opinion, which places the case on the substantial rights and equities of the petitioners, there is no occasion to detail the facts further than they appear in the opinion and in what is already stated.

In November, 1860, this case came to trial below, and the defendants had verdict and judgment; whereupon the plaintiffs appeal.

*W. G. Webb,* for the appellants.

*L. Lindsay,* for the appellees, after discussing the facts and many of the law questions presented in the case, concluded as follows :

What is the difference in equity between an appropriation by cultivation and an appropriation by sale? The only object of the court, in partition, is to protect equally the interests of all the co-tenants. If one sells a tract by metes and bounds, less in number of acres, and less in value, than his interest, and each of the others obtains a tract, or tracts, fully equal in value to his entire interest, who can complain?

In McKey v. Welch, 22 Texas R., 390, the court intimate that the rights of a purchaser will be protected in partition.

The cause of the appellants does not address itself to the equitable consideration of the court. For, the consideration paid by Baylor for the five hundred acres in controversy, was received by all the co-tenants, in proportion to the extent of

their respective shares. Baylor's tax title to the entire league was an incumbrance upon their title, more or less serious. To remove this incumbrance and the possession under " tax title," was an object to be desired by all the parties interested in said league of land. At that date, as is historically known to the court, the validity of " tax titles " was not settled by the courts of the country. Baylor was in possession, under deed of record, and had either to be ejected by legal process, or compromised with and bought off. To litigate, would necessarily have cost the parties heavily, whilst the probable result was involved in grave doubt. John Alley then acted wisely, for himself and co-tenants, to effect a compromise. It can not be seriously doubted that the compromise with Baylor cost less, by far, than it would have cost to litigate the title of Baylor, even admitting that there was no reasonable doubt of a successful result. Appellees proposed to prove that it would have reasonably cost more to litigate the title of Baylor than John Alley paid, but the evidence was excluded by the court.

John Alley, in the compromise with Baylor, professed to act for his co-tenants, though it seems he had not the legal authority to act for them. But, whether he acted by their authority or not, it is plainly apparent that he acted for their benefit; and it is ungenerous and inequitable for any of them to disregard the sale to Baylor. As we have seen, however, the appellants are not in a condition to complain, since they are in the peaceable enjoyment of more than they are legally or equitably entitled to. It can not be argued that, although the appellants are *now* in the possession of the six hundred and seven acres of the upper fourth of said league, yet they may hereafter be disturbed in that possession. For all the parties in any way interested in the league, except John Alley and Baylor, having been parties to the suits for partition, none could complain of the possession of appellants, except John ; should he complain, he would certainly be charged with the five hundred acres sold to Baylor, and the appellants would be in no worse condition than they originally were.

Walker, J.—In the year 1834, Wm. M. Baylor purchased, at tax sale, a certain league of land, situate in Fayette county, known as the "Alley league." The sheriff of the county, who was *ex officio* assessor and collector of his county, on the 2d day of November, 1843, executed and delivered to Baylor a deed for the whole of said league, which he filed for record on the 23d of November, 1843. Five hundred acres of this land became the subject matter of controversy in this suit.

To render our opinion intelligible, we must recite some of the historical facts of the country, as well as the facts in this case. Mexico, of which the State of Texas, prior to 1836, was a part, was itself, prior to 1824, a Spanish province, governed by the civil law of Rome and the subsequent laws and decrees of the Spanish monarchy. After Mexico had thrown off her allegiance to the Spanish crown, and ceased to be governed by a vice-royalty, she still continued in force the civil law, which was in force in Texas in 1827, as one of the States holding allegiance to Mexico. After her independence, Mexico offered large and tempting grants of land to such persons as would settle in and become citizens of her provinces. About the year 1826, William Alley, Sr., who had been a resident of Missouri, emigrated to Texas with his family, (as it was then constituted,) consisting of three sons—John, Thomas and William Alley, Jr.

William Alley, Sr., had also two daughters, Sarah, intermarried with one Chaplin, and Mary, intermarried with one Hill. Sarah resided with her husband in the State of Arkansas, and Mary with her husband and family resided in Missouri, at the time of their father's emigration to Texas; and Sarah never removed to Texas, but about the beginning of the year 1831, Mary removed with her family to the State of Texas.

In the year 1827, William Alley, Sr., was killed by Indians, and before he had received any patent or other muniment of title from the government of Mexico. On the 10th day of May, 1827, John Alley, the eldest son of William Alley, Sr., dec'd, filed a petition with the Mexican commissioner, Gaspar Flores,

the successor of Baron de Bastrop, in which he set forth the rights of his father to one sitio of land, as a citizen of the first colony "permitted by the supreme Mexican government to the Empresario Stephen F. Austin;" also, his father's death and his own willingness to obey and abide by the laws of the Mexican federation, as well as the particular laws of the State; and such proceedings followed before the commissioner, Gaspar Flores, and the Empresario Austin, that on the 12th day of May, 1827, a grant was made in due form of law, to the heirs of William Alley, Sr., deceased, for one sitio of land described therein, of which the land in controversy is a part.

The term "heirs" can only include such as were heirs by the civil law then in force in Texas, as a part of Mexico. (Yates v. Iams, 10 Tex. Rep., 168.) This was a case decided in an opinion delivered by the learned Chief Justice, (Hemphill) and so aptly applies to the case at bar, that we not only refer to it as furnishing a most able illustration of the laws of Spain touching and regulating the rights of foreigners, transient and domiciliated, but we quote from the syllabus of the case as follows:

"It seems that the laws of the Indies remained the laws of Mexico after the revolution. But whatever may have been the law of Spain or of the Indies, I am of opinion that upon general principles pervading the law of 1823, under which this grant was made, and upon the general policy of the government in relation to the right of property in lands (granted for the purposes of colonization) at the time of the death of the intestate, an heir domiciliated out of the Republic of Mexico could acquire no right by inheritance to lands of persons dying in the province of Texas."

The appellants in this suit are the heirs-at-law of Mary Hill, and hard as it may appear to exclude them from the inheritance of their father's property, we must apply to them the rule laid down in this case. At the death of William Alley, Sr., to whom a right to one sitio of land had accrued under the colonial grant to Stephen F. Austin, neither did Sarah Chaplin nor Mary Hill take any interest in the league of land thus granted

to " the heirs of William Alley, Sr.," for they were not heirs in the sense of the civil law. (See Holliman's Heirs v. Peebles, 1 Tex. Rep., 673.)

The case of Warnell v. Finch, 15 Tex. R., 162, is cited to show that aliens could take under a grant from the government, but the rule laid down is not authority in this case. The grant in that case was under the constitution of the Republic of Texas, in which provision was expressly made for such a grant, and none such existed in 1827 under the laws in force in the Republic of Mexico; and by these laws the rights of the parties must be settled, so far as they are applicable.

In 1839 Thomas Alley, to whom belonged an undivided third part of the Alley league, or 1476 acres of it, died. Upon his death, without wife or issue, his brothers, John and William, and his sisters, Sarah and Mary, being his only lawful heirs, each inherited a fourth part of this 1476 acres, or 369 acres, if equally divided by acres; and here, for the first time, did any interest in the land vest in the sisters, Sarah and Mary, or their heirs. But, in 1843, Wm. M. Baylor, who was the holder of a tax title, and in possession of the entire league, conveyed the entire league, excepting 500 acres of the upper part, to the heirs of William Ally, Sr., deceased; and here, again, the interest of Sarah Chaplin and Mary Hill was enlarged, for, in the absence of any proof to the contrary, we will hold the tax deed to Baylor, accompanied by possession, improvement and cultivation, to have been a good title. And it may not be improper to warn the appellants that they, too, had better acquiesce in this title, for it is only through it that the heirs of Sarah Chaplin and Mary Hill can claim anything more than what they inherited from Thomas Alley, as his heirs-at-law. Walker R. Baylor and William Baylor claim to hold the land deeded by John Alley to their father, William M. Baylor, by deeds of gift from him, and their title must rest upon the strength of their grantor's.

It is contended that John Alley was not authorized to convey any interest of his brothers and sisters to William M.

Baylor. This may be true, but he could convey his own interest in the land. But it is said he conveyed the 500 acres to Baylor by metes and bounds, which, as a mere tenant in common, he had no right to do. This proposition of law is correct in the abstract, but subject to qualifications which are founded upon equity and good conscience. In McKey v. Welch, 22 Texas R., 396, the court say (quoting from Kent) : " One joint tenant, or tenant in common, can not convey a distinct portion of the estate by metes and bounds, so as to prejudice his co-tenants or their assignees, even though it may bind him by way of estoppel." But the court, in this case, clearly intimate a rule which would entitle Baylor to 500 acres of the land which might be set off on partition as the share of John Alley. In Hart's Devisee v. Hawkins, 3 Bibb, 505, the court held that a co-tenant may sell one of several tracts, and the purchaser will be protected if his vendor did not sell more than his proper share of the land owned in common. This is also the the recognized doctrine in Smith v. Frost, 1 Bibb, 377, and Withers v. Thompson, 4 Monroe, 334, and we take it to be the rule (though a little indistinct) in McKey v. Welch, 22 Texas R., 390. We do not feel disposed to amplify this principle to extend it to the present case. This action is one in which the plaintiffs below must recover (if at all) upon the strength of their own title. They can not rely upon the weakness of their adversary. Then if he strip them of what they claim under the deed from Wm. M. Baylor, and confine them merely to that which come to them as an inheritance from their uncle, Thomas Alley, they have much more land in possession now than they are entitled to hold ; but if we give validity to that deed, they may perhaps hold what they have now in possession, but they are in no position to claim more. If the compromise between John Alley and William M. Baylor, and the deeds passed between them, were good in part, they were good *in toto,* and all persons must be bound by them who were in any way parties or privies to them.

John Alley, under whose deed the Baylors claim, owned one-third of the league, or 1476 acres, before the death of his brother Thomas, and upon his demise he became the owner of one-fourth of one-third more, or 369 acres, making 1845 acres. Of this, on the 29th of April, 1844, he sold to Baylor 500 acres, and to Bostick he subsequently sold 1107 acres, making in all 1607 acres, less by 238 acres than he actually owned; and it is not claimed that the 500 acres sold to Baylor were of more than average value, compared with the remainder of the land. The other heirs of William Alley, Sr., or their assignees, are holding these 238 acres of land, which in right belong to John Alley, leaving his deed to Baylor to operate only against his individual interest in the land. His brothers and sisters were equally interested in the compromise; Baylor held the whole of their land by a title which may have been good, or not. We must say that they invoke the equity of this court with but bad grace, having so signally failed themselves to do equity.

This case has been once before decided in this court, and most of the questions met, examined and determined, in 23 Tex. R., 261. We have patiently read and considered an elaborate and ingenious argument, filed in this case with the brief of the appellants, but by far the greater part of which, with much greater force, would have applied to the former case. There may have been some irregularities in that case, but this court has passed upon them, and, as we think, very correctly, after a most elaborate argument, which would, as in the present case, have been good if it had applied to the material questions in the case. We think in the court below substantial justice was done, and in sufficient compliance with the forms of law. There are some questions of practice governing the admission of evidence, which, were it important to the decision of the case, we would feel bound to comment on, but we do not consider that any material error has been committed in the proceedings of the District Court, of which the appellants have any right to complain. They may be well satisfied if allowed

to hold so much of the original Alley league as they now have, without claiming more.

We, therefore, affirm the judgment and decree of the court below, with costs to the appellees, as well in the District as in this court.

Affirmed.

LINDSAY, J., having been of counsel, did not sit in this case.