The action stood continued to this term ; and now the opinion of the court was pronounced as follows by
Sewall, J.
The demandant relies for his title and seisin on the levy of an execution ; and it appears that the premises in controversy were, on the fifth day of March, 1799, set off to him, and _ he accepted them, as the real estate of David Jones, in satisfaction of judgment recovered against him ; the premises having been attached upon the writ, by which the suit was commenced, and the levy and extent being within thirty days after the judgment was rendered.
Against this, supposed title the tenant contends, that the prem ises taken in execution were never the real estate of David Jones ; and for his title to them relies on a deed of bargain and sale from one George French, made subsequent to the attachment in the demandant’s suit against Jones, but before the execution against him was extended.
The controversy is therefore to be decided on the single question, *365 which has been fully and ingeniously argued upon the case reserved, whether the premises demanded were the estate of Davpl Jones at the time when they were attached upon the demandant's writ; to which time the subsequent levy of his execution has relation, so as to avoid any mesne conveyance or title derived by or from David Jones.
In tracing this title we find that the premises in controversy, with other adjoining real estate, were, in May, 1798, conveyed in fee simple, by a deed duly acknowledged and recorded, from one Michael Williams to the said George French; and the deed is expressed to be made for a valuable consideration in money paid him, and it purports to be a deed of bargain and sale, to the sole use and behoof of French and his heirs and assigns.
"The parties have agreed that Williams was, until the execution of this deed, the proprietor and owner of the estate thereby conveyed; but the demandant adduced some * parole testimony, particularly that of George French himself, to prove that the bargain from the estate conveyed to him, and which he has since conveyed to the tenant in this action, was made for Jones, and that the consideration acknowledged by the deed was in fact paid by him.
It was further proved by the same parole testimony, that immediately after the deed to French was made and received by him, or at the same time, he executed a bond to Jones in the penal sum of 1000 dollars, conditioned to convey the premises purchased of Williams to any person whom the said Jones should appoint.
If upon this evidence the title to the demanded premises should be adjudged to have been in Jones at the time of the demandant’s attachment, and to have continued in him by relation until taken by his execution, it must be so adjudged altogether upon parole testimony, contradictory to, and controlling a solemn deed, acknowledged and registered, and accepted by the witness; who is thus employed to defeat a title which he himself has conveyed to the tenant.
Even the bond upon which the demandant relies, as the only written evidence of Jones’s title, is not produced. It may be said that, from the nature of the casé, the bond is not in the power of the demandant; and so it appears. But, then, it also appears that it is not in the power of the tenant. And if written evidence is at all essential "to the demandant’s title, this is not the case where parole evidence of the contents of a writing may be received, and have the effect which the writing itself would have; as where a writing is in the power of a party, against whom it is to be used- and after due notice he refuses or neglects to produce it.
*366 I am also inclined to think the witness examined in this case incompetent, and that he ought not to have been received to swear that he had no title, after he had undertaken to convey a title to the tenant. It is stated, indeed, as the opinion of Lord Holt, that a man, who conveys land, * may be a witness to prove he had no title, although not compellable to give such evidence. But this is certainly opening a door to fraud ; especially where the witness, as in this case, is supposed to have conveyed without warranty. And the evidence received at the trial, to affect the tenant, as having knowledge of the transaction with Williams, that it was in fact for the use of Jones, does not remove the objections, which arise in my mind, to the competency of the evidence, upon which the proof of the demandant’s title is supposed to rest, (a)
The circumstance that the tenant was a subscribing witness to a lease, in which French and Jones joined as the lessors, affords no necessary presumption that he knew the contents of the instrument; or, if he did, that he had knowledge of the nature of Jones’s title. From the subsequent conduct- of the tenant it may be collected that, after a belief on his part that Jones had the title, he became in some way satisfied that he had been mistaken; and he now relies upon a title obtained from French.
However, in the argument upon the general question reserved, it seems to have been taken by both • parties as sufficiently proved at the trial, that the conveyance to French was for a consideration paid by Jones; and that in consequence Jones holds, or at least had a bond from French, by which he engaged to convey the premises purchased, as Jones should appoint.
It is true, that by the ancient common law, the use or beneficial interest in lands, after a bargain concluded, and the purchase money and consideration paid, arose to the bargainee, even before any assurance or writing. But the transfer of the use was not a transfer of the land itself; and the only remedy of the bargainee, or cestui que use, was in chancery. And after the statute of Hen. 8, by which the land was transferred to the use, or according to the use or beneficial interest; in the same parliament, as Lord Bacon observes, provision was made by statute, that land should not pass away by a mere verbal bargain and sale * upon payment of money, nor unless there was a writing indented between the parties. (16)
Provisions to the same purpose have been enacted with us, and *367 have been in force from the earliest migration of our ancestors to this country. Those by which the transfer of real estates is regulated at this time, are to be found in the revised statutes. (17) As I understand these provisions, no estates, certain or uncertain, in messuages, lands, tenements, or hereditaments, beyond an estate at will, can be made or created by parole, whatever may be the consideration paid for the same; nor can any estate or interest in, to, or out of any messuages, lands, tenements, or hereditaments, be assigned or granted, unless it be by deed or note in writing; and grants and assignments, as well as all declarations or creations of trusts or confidence of any lands, &c., are to be manifested and proved by some writing. And besides all this, deeds and conveyances of lands, to avail against any other than the grantor or his heirs, are to be acknowledged and recorded.
In the case at bar, therefore, the parole testimony of the verbal bargain, and of a consideration paid by Jones, can have no operation upon the deed of Williams to French, to raise a use to Jones, his heirs or assigns, either from the grantor or grantee. No such use, or intent of the parties, is expressed in the deed itself, or is to be collected from it, but the contrary; unless we suffer the deed to be controlled by the contradictory verbal testimony; or unless a use can arise without any written contract or declaration.
The statute provision is also in the way, to prevent any application of the parole testimony to the condition of the bond given by French. If a use arises upon the bond to Jones, such a use or trust as may be construed a transfer or grant of an estate to him, or which may become so by the operation of the statute of uses, the assignment, grant, creation, or declaration of the use, must be in writing, even to affect French, if the controversy was with him. Now, * the condition of this bond, taking it to be according to the parole testimony respecting it, contains no acknowledgment of any consideration of money paid by Jones, or of any intention of holding the estate conveyed, to the use of Jones, his heirs and assigns. On the contrary, taking the written evidence resulting from the deed and bond in connection, without suffering it to be controlled by the verbal testimony, the premises in controversy, and the other tenement conveyed to French, were to be holden to his sole use in fee simple; until an appointment by Jones and a compliance with it by French; for which purpose he engages to execute another conveyance; and if he should refuse, the only remedy for Jones, in this jurisdiction, where no chancery power exists, would be an action for the penalty. The *368 words, therefore, which plainly express a different intention of the parties, are not apt or suitable to raise a use to Jones. (18)
There is a further objection, which is insuperable, unless resort be had to the parole testimony; and that is, the condition of the bond contains no acknowledgment or proof of a consideration paid by Jones. (19) The bond does not necessarily import a consideration, for it may be enforced to the extent of the penalty, although made without any consideration ; and there is nothing in the condition, which imports a consideration of any kind. And although it is said, a consideration consistent with the deed, or with the considerations expressed, may be averred, (20) yet this is in cases where a use is declared, but not where the use itself depends upon proof of the consideration.
And when this case is considered, as it arises between the demandant and a stranger to the contract, whatever it was, or might have been construed to be, between French and Jones, it seems impossible to construe it a conveyance executed, or a transfer in any form to Jones, which can avail against the conveyance from French to the tenant in this action. To give this effect to a bond, which contains * no expression of transfer, no declaration of a use, importing a different intention of the parties, and not acknowledged or recorded, or required to be so for any of the purposes expressed to be intended by it, would give occasion to a novel form of conveyance, and one that must have an alarming and dangerous tendency ; even if restricted to a case of actual notice to the party liable to be injured by it. What danger could he apprehend from a pocket conveyance, if so it may be considered, depending upon the will of his grantor whether it should ever be disclosed, and containing no intimation of a title vested in Jones, and arising to him, if at all, by a very enlarged application of the doctrines of uses and trusts ? Compared with the inconveniences to purchasers from this quarter, the possible inconvenience to creditors, from a concealment of the property of their debtors, is light and trivial.
Cases will rarely happen, where a citizen will vest his property in real estate upon a title depending upon private confidence, where the law affords no specific remedy, and no security against the accidents to which the trustee, as well as the owner of the beneficial interest, is exposed. And as to aliens, it is hardly a supposable case that a credit is afforded them upon their property in real estate, unless it happens from an entire want of caution, or some gross mistake.
*369 I have not, in the examination of the question reserved in the case at bar, taken any notice of the circumstance, that Jones was an alien, and that he was induced by it to adopt a form of conveyance, intended as a security of his purchase in real estate against an escheat to the government. It is merely the consequence of a civil disability, not of any crime or offence, that an alien cannot acquire a permanent property in lands ; and when he confides the legal title to a citizen, and depends absolutely upon him for the avails of his purchase, this is rather a conformity to the laws, than an evasion of them. The principles of the common law, applicable to this subject, are not to be * understood or employed as nets for forfeitures; but as a security against an undue foreign influence, which might happen to be injurious to the political concerns of a nation. Aliens, therefore, although capable of purchasing real estate in perpetuity, and of conveying it, yet hold it at the will of the sovereign of the territory where they reside. But this condition or disability, arising out of their particular relation to the community, has no effect upon the forms of conveyance ; which are to be the same, and to receive the same construction in the case of an alien as in the case of a citizen, (a)

Demandant nonsuit.

 [Vide, contra, Worcester vs. Eaton, 11 Mass. Rep. 368. — Loker vs. Haynes, ib 498. — Bridge vs. Eggleston, 14 Mass. Rep. 245. — Ed.]

 Bacon's Lau: Tracts, 150.— Com. Big tit. Covenant, G. 1.

 Stat 1783, c. 37.

 Com. Dig. tit. Covenant, G. 2.

 Ibid. G. 3.

 2 Co. 76, Cromwell’s case.

 [Township No. Six vs. M'Farland, 12 Mass. Rep. 325. — Vide Goodioin v* Hubbard & M., 15 Mass. Rep. 210, and note to that case. — Ed.]