Parker, C. J.
(After briefly reciting the facts proved at the trial.) The question presented to the Court is whether, under the circumstances stated, the demandant can maintain his action for the land. If he can, we must submit to the humiliation of having a gross fraud and conspiracy successfully practised, without being able to afford any relief to those against whom it was perpetrated. But we apprehend that our laws do not merit such a reproach ; and that, by attention to certain general principles and rules, always recognized and respected as the basis of judicial decisions, justice may be done, the purity of the laws vindicated, and the purposes of this fraudulent combination defeated.
It would be remarkable indeed if, in a commonwealth in which there has ever been a wholesome exercise of legislative and judicial power, for the protection of honest creditors against the frauds and devices of dishonest debtors, a door should have been left open wide enough for the escape of all who should be disposed to convert the property of others to their own use. (a) This would certainly be the effect of a decision in favor of the demandant in the present action. For the debtor will have only to find a friend willing to take a conveyance of real estate in his name; and * all his funds may forever be shut up from his creditors, and he may enjoy the rents and profits without molesta- . tian.
To say that the legislature can alone cure so enormous an evil, is to say that, ever since the settlement of the country, there has been a defect in the administration of justice here which has probably existed in no other civilized country. (b) Being of opinion that there is no such defect, but that the existing laws are competent to the detection of fraud, and to the defeat of its purposes, whenever *198 it is committed for the purpose of defeating creditors of their just debts, I shall proceed to state the reasons why the verdict in this case should be allowed to stand, and judgment be rendered conformably to it.
I take it to be a sound and uncontroverted maxim of law, that every plaintiff or demandant, in a court of justice, must recover upon the strength of his own title, and not because of the weakness of that of his adversary ; that is, he shall not recover without showing a right, although the adverse party may be unable to show any. It is enough for the latter, that he is in possession of the thing demanded, until the right owner calls for it. This is a maxim of common justice, as well as of law. It is true that a weak title may prevail against one that is weaker, or where there is none. But it is universally true that the existing state of things cannot be disturbed without proof of a right in the party who undertakes to interrupt it; unless the defendant should, by his pleadings, undertake to change the burden from the plaintiff to himself; as in the case of trespass quare clausum fregit, in which the defendant should plead soil and freehold in himself or another; or in other actions, where he should admit the plaintiff’s declaration, and set up some special matter in defence.
In a writ of entry, like the present, it is true that proof of seisin, which may be by possession alone, is sufficient to put the tenant to proof of some title or right of possession in himself, otherwise the demandant will recover against him. And this is analogous to the principle before stated ; * for the one in quiet possession is to remain so, until he is removed by one having a title or a better right to the occupancy, and the tenant is supposed, by the form of action and the issue, to have ousted the demandant.
It is true, also, that a deed of bargain and sale from one having a ight to convey, if executed and delivered according to the forms prescribed by law, will give a seisin to the grantee in such deed, without any entry or pernancy of the profits. Whether, in the present case, the demandant entered under his deed from Watson, or not, is immaterial as to the question of his seisin. If he entered, his entry was undoubtedly in virtue of his supposed title from Watson, and with a view of executing the designs of his father and Watson; and if he did not enter, his deed, provided it were bona Jide, would give him a seisin against every one ; and even if fraudulent, against the grantor and his heirs, and every one else who has not a right, by the laws of the land, to control its operation and effect.
But the tenants, in the case before us, were put into possession *199 of the land by process of law, in order to execute a judgment obtained by them against the demandant’s father. They insist that the land did, in fact and in truth, belong to the father, and that the conveyance to the son was a mere contrivance to screen the property from their execution; and in this character, when called upon by the demandant to render the land to him, they have a right to insist upon proof of a lawful title, or at least of a prior lawful possession, unembarrassed with any fraudulent purposes and designs against the creditors of his father. But the deed set up by the demandant is most palpably fraudulent against the creditors of Goodwin, senior. The land was originally purchased by Watson, for him, at his request, and with his money. When Watson conveyed it to the demandant, it was for the avowed and express purpose of preventing the creditors of his father from attaching it; and the demandant received the conveyance as the agent of his * father, and for his benefit, that be might defraud his creditors out of the value.
By the statute of 13 Eliz. c. 5, and by the principles of the common law, all deeds, &c., made by covin, and with the intent to delay or defeat creditors, are null and void as against the creditors intended to be defrauded. This deed must, therefore, be void as against the tenants. It gave no seisin to the demandant, nor can an entry made under it render it effectual; for it is, to all intents and purposes, between the present parties, void.
Nor can the demandant be considered as in by disseisin ; for he disseised no one, having entered by the consent of all who had an interest in the land. Having entered by force of a fraudulent deed, and for a fraudulent purpose, neither his deed nor his entry shall avail him against the intended victims of his fraud.
The demandant has, therefore, proved no seisin, and so cannot disturb the possession of the tenants. He claims under a title which he has no right to set up against their possession.
It has been said, however, in argument, that, if the deed from Watson to the demandant is void, it will follow that Watson is the owner of the land, and thus the title of the tenants is negatived. If this were true, it would not entitle the demandant to recover the land from the tenants. But another answer is, that the demandant himself cannot avoid that deed, to the prejudice of any one, for he is a party to the fraud. Nor can Watson avoid it; but, should he claim the land, he would be rebutted by his deed, which is not void against every one, but only against the creditor whose rights it was intended to defeat. It is operative to give a seisin to the demandant against Watson and his heirs, and also against a stranger who does not stand in the relation of a creditor, or of a purchaser *200 for the valuable consideration; but against the tenants it is void and ineffectual. Upon the principles before stated, we think it clear that the demandant, producing so foul a title, founded *in a conspiracy to cheat the creditors of his father, cannot be permitted to avail himself of the mere forms of law, to give success to so iniquitous a project, (a)
The objections which have been raised against this conclusion are merely technical, but they deserve consideration, and we think may be easily answered.
First, it is said that the statute which provides for the extending of executions on real estate gives to the creditor who levies no other or better title to the land than the debtor himself had in it; and, as no title has been proved to have been in Goodwin, senior, so the tenants could have acquired none by their levy.
Perhaps it is a sufficient answer to this objection, that the demandant has no right to allege it. Having shown no title in himself, he shall not be permitted to quarrel with the title of the tenants — who, being in by process of law, may maintain their possession against all who have not a legal interest in the land. But it may be added that the words of the statute have never received a strict and literal construction. If Joseph Goodwin, senior-, had made a fraudulent conveyance, himself, of land of which he had been the owner ; or if he had made a voluntary grant of it to the demandant, without consideration, — he would have no title in the land ; for, in both instances, his deed would have passed the land as against himself and his heirs; and yet a creditor, by levying upon it, would gain a good title. And, in the present case, if there be any secret trust between the father and son, or any declaration of such trust, which may hereafter be produced, the levy will forever bar Goodwin, senior, from claiming the land.
Another view of the transaction may show that the conclusion to which we have come is not only just, but conformable to legal principles. The conveyance by Watson to the demandant may be considered as a voluntary conveyance by the father to the son, to the prejudice of the creditors of the former. The land was originally purchased for the father, at his request, and with his *201 money. Watson * was, in equity, the trustee of Goodwin, senior, and agreed to convey to him on demand. He directs a conveyance to his son, who neither pays, nor agrees to pay, any thing for it; but, on the contrary, avowedly takes the conveyance for the use and benefit of his father. Now, it is true that there is no declaration in writing ol the trust; so that, by our statute of frauds, it cannot be proved or enforced as a trust estate. Nor is it, we apprehend, a trust resulting by implication of law ; because that, we think, cannot be proved by paroi evidence of the consideration paid by Goodwin, senior. Nevertheless, we apprehend that the proof of a fraudulent design on the part of Goodwin, senior, to convert his personal funds into real estate, the apparent title to which should be in his son, the demandant,—and this design aided and abetted, and carried into actual execution, by the son, — will, for the purpose of protecting the creditor, who was attempted to be defrauded, place the title where, according to the real intentions of the parties, it was to be beneficially fixed, and not where the mere forms, adopted for so iniquitous a purpose, would seem to place it; and this, without considering the fraudulent debtor merely as cestui que trust of an estate, of which his fraudulent coadjutor should be the legal owner. For the effect of this principle is merely to prevent the party who has joined in a fraudulent conspiracy from recovering the property to his own use, or that of his partner in the fraud, from one who has every equitable title to it against both of them.
Perhaps it would tend to further the views of the legislature, in protecting creditors against the manifold devices of debtors and their coadjutors, that a statute should be passed similar, in its effects, to that of New York — which provides that, whenever real estate is held in trust, it may be taken, by the creditor of the cestui que trust, in the same manner as if the legal estate was in him ; and also to enact that paroi evidence of such trust should, in such cases, be admissible.
* We have considered the argument of the demand-ant’s counsel against the suggestion .that the transaction between these parties created an equitable trust in Goodwin, senior, as cestui que trust, the demandant being the trustee, or legal owner, and we cannot deny its force.
By our statute for the prevention of frauds and perjuries, it is expressly enacted that no trust shall be held to exist, unless it be created or manifested by writing, except those which arise by implication of law. Here there was no declaration of trust in writing; so that the question can only be, whether there is a resulting trust, or one arising by implication of law; and there is nothing in the *202 deeds from which such an implication can arise. Now, it has been held, in several cases decided by this Court, (1) that paroi proof cannot be resorted to, to raise a trust which does not appear by the deed itself. And when it is considered that the main object of the legislature, in passing the act, was to exclude oral testimony in relation to real estate, we cannot doubt the correctness of those decisions, notwithstanding the Supreme Court of the state of New York has decided otherwise. (2) (a)
In the case just alluded to, it is expressly decided that paroi proof of a consideration paid by one who is not party to a conveyance is admissible for the purpose of showing an equitable interest in him who paid the money ; and the cases cited by the judge who delivered the opinion of the court seem to favor that position. But we do not think that the point is expressly settled in either of those cases; and the general current of English authorities is opposed to it. In the case of Ambrose vs. Ambrose, (3) the lord chancellor says, “But for the statute of frauds,” there being proof of a consideration paid by another than the grantee, “ there would be a resulting trust to him who paid the money.” So, in Prec. in Chan., 183, it is said that a trust cannot be proved by paroi. And Roberts, who appears to have summed up the authorities on this head, says, (p. 94,) “ That a resulting trust shall not be suffered *to be raised upon an instrument by paroi proofs, is a proposition so well supported by the cases where, upon a purchase, the money has been attempted to be proved to have been advanced, either in part or in the whole, by a party not named in the conveyance, — such' paroi evidence has always been rejected, on the ground of its contradicting the instrument.”
*203 There are some cases, indeed, which look the other way; especially the case of Gascoyne vs. Thuring. (4) But it is not clear that the question of paroi proof came directly before the court in this case ; the object being principally to show that there might be a trust without a declaration in writing; which, indeed, is expressly provided for, by the statutes of frauds, in England, in New York, and in this state.
It is true, the cases referred to, as decided in this Court, were free from the taint of fraud; or, rather, were decided without reference to a circumstance of that nature. And, were it not for the difficulty which would still be in the way of the creditor if a trust estate should be found to have been created, perhaps, with a view to detect and defeat fraud, the legal character of a trust might be given to the transaction; for it is well known, as a common occurrence, that deeds which have their foundation in fraud against creditors may be contradicted, in all their material provisions, by paroi testimony. But if Goodwin, senior, is cestui que trust, then the demand-ant is seised in fee, and has a right to the possession of the land, that he may execute his trust; for our laws do not provide, as the English statute of frauds and the New York statute do, for the levying of the execution upon the land, for the debt of the cestui que trust.
But we are glad that, without any further legislative interposition, justice can be done in this case, and in others like it, if any such exist; for it would be lamentable indeed that estates, held notoriously for the use and benefit of debtors, should be guarded by the laws against the claims of # those with whose money they were purchased; for, in all such cases, it is, in fact, the money which belongs to the creditor which is so dishonestly appropriated.
We think, upon the ground that the tenants are in possession under process of law, and are called upon to surrender the land to one who has no real interest in it, but who is manifestly proved to claim it, under cover of the forms of law, for the purpose of enabling the debtor to defraud his creditor, that the verdict, which affirms the tenants’ right of possession against the demandant, is right, and that judgment must be entered accordingly.

Judgment according to verdict.

 It is no more remarkable than that a court having entire jurisdiction in equity has not been established.

1) There was formerly a court having jurisdiction in equity established by the provincial and colonial laws of Massachusetts; (Prov. and Col. Laws, pp. 93, 94, 223, 275;) but since the establishment of our constitution, the want of such a jurisdiction has given much occasion for the reproach to which the learned chief justice erroneously supposes we are not obnoxious.

 It is quite clear that the legal title to the lands was never in Goodwin, senior, the debtor, and therefore no execution obtained by any of his creditors could be extended or levied upon them, and no conveyance of them could, at common law, or within the statute, 13 Eliz. chap. 5, be regarded as a fraud upon these creditors. He never could have fraudulently conveyed away that which never belonged to him, nor could they lawfully claim as his what never was vested in him. — See note to this case, 1 Bigelow's Digest, p. 201. — Storer vs. Batson, 8 Mass. Rep. 431. — Jenney vs. Alden, 12 Mass Rep. 375.—Kempton vs. Cook, 4 Pick. 365. — Russell vs Lewis, 2 Pick. 508. — Smith vs. Lane & Al. 2 Pick. 205. — Small vs. Proctor, post, 495.

 12 Mass. Rep. 104, Northampton Bank vs. Whiting. — 8 Mass. Rep. 431, Batson vs. Storer. —12 Mass. Rep. 375, Alden vs. Jenny. — [Smith vs. Lane, 3 Pick. 305.]

3 Johns. 216. (a) The decision of the Supreme Court of the state of New York is the better law. The statute of 1783, c. 37, § 3, expressly excepts all trusts and confidences arising or resulting by implication, construction, act, or operation of law. And in England and elsewhere, under a similar clause in a similar statute, it has been held, that such a trust or confidence may be shown by paroi evidence. — Lord Altham vs. Earl of Anglesea, 2 Salk. 676. — Doug. 26. — Finch vs. Finch, 15 Ves. 43. — Young vs. Peachy, 2 Atk. 256. — Rider vs. Kidder, 10 Ves. 360. — Bartlett vs. Pickesgill, 1 Eden. R. 115. — Stark vs. Canady, 3 Lit. 399. — Boyd vs. M' Lean, 1 Johns. Ch. R. 582. — Bottsford vs. Burr, 2 Johns. Ch. R. 409. — Livingston vs. Livingston, 2 Johns. Ch. 540. — Snelling vs Utterback, 1 Bibb, 609. — Stephenson vs. Stephenson, 3 Bibb, 15. — Hart vs. Hawkins, 3 Bibb, 506. — Dealtry's Heirs vs. Murphy, 3 Marsh, 477.— Perry vs. Head, 1 Marsh, 47. — Dean vs. Dean, 6 Conn. R. 285. — Sterret vs. Sleeve, 5 Johns. Ch. 1.— Dorsey vs. Clark, 5 Har. & Johns. 551. — Powell vs. Monson and Brimfield Manufacturing Company, 3 Mason, 362, 363. — 4 Kent's Commentaries, 305, 306, 2d ed. — 3d vol. Law Magazine, art. 5, p. 131.

 1 P. Will. 321.

 1 Vern. 366.