## E. C. Gillenwaters *et al. v.* Miller, Gardner & Co.

1. Chancery—Trust Deed—Sheriff's Sale—Priority of Lien.—In August, 1867, Adair and Isom conveyed in trust, a lot of land to Arnold, to secure a note due to Rice. On the 14th of December, 1867, M. G. & Co. purchased the property from Adair and Isom, took a deed, and appointed Haynie their agent, and placed him in possession. On 29th January, 1868, M. G. & Co., purchased the note from Rice, which was secured by trust deed on the land, and which note M. G. & Co. claim is unpaid. T. D. & Co. held a judgment against Adair & Isom, recovered September 25, 1867, and had the land sold at Sheriff's sale, March 16, 1868, and Gillenwaters & Haynie became the purchasers. *Held:* That the transfer of the note from R., by M. G. & Co. was an assignment, and carried with it all the rights of R. in equity. The transaction with R. must be treated as an assignment, and not as a payment, and complainant may avail of all the advantage it may afford against G. & H., the purchasers at Sheriff's sale.

2. Same—Agent—Equity Requires Fidelity to the Principal.—A court of equity will exact fidelity and loyalty from agents and fiduciaries of every sort, to their principals, and will strip them of every advantage obtained by a breach of trust and confidence. It will clothe them with the character and responsibilities of trustees, in respect to dealings and purchases which involve a breach of good faith, and will turn over, upon just terms, the fruits of such transactions, to the principal.

3. Same—Equity of Redemption.—M. G. & Co. may elect to treat the purchase at Sheriff's sale as made for them, as the judgment under which G. & H. bought, was a lien upon the equity of redemption, or they may have a foreclosure of the trust deed,

4. Same—Bankruptcy—Fraudulent Assignments.—The assignment made by Adair & Isom, was not fraudulent within the purview and intendment of the bankrupt law. The uniform construction placed upon the law by the Federal judiciary, is, that the purchaser and the assignee must participate in the fraud. The latter must know the pending insolvency of his debtor, and must be aware that he is obtaining a preference over other creditors. It does not appear that M, G. & Co. were aware of the insolvency of Adair & Isom,

Appeal from the chancery court of Alcorn county. Hon. A. E. Reynolds, Chancellor,

The complainants, Miller, Gardner & Co., filed their bill, alleging, substantially, that on the 2d day of August, 1867, defendants, Adair & Isom, were the owners, in fee simple, of the property in controversy, lot No. 7, in block 85, in Corinth, Mississippi; that the said Adair & Isom, being indebted to one J. J. Rice (who is not a party to this action), they executed their note for the said debt, for $470.00 due the 25th of December, 1867, and to secure the prompt

payment of the same, executed a trust deed to defendant, J. F. Arnold, as trustee, on said property, which was filed and recorded on the 6th of August, 1867; that on the 14th of December, 1867, Miller, Gardner & Co. purchased the property from Adair & Isom, taking a deed in fee simple for the same, which was recorded the 10th of February, 1868; that possession was delivered to Miller, Gardner & Co., who made defendant, E. F. Haynie, their agent, with instructions to rent, and that Haynie accepted the agency.

That on the 29th of January, 1868, complainants purchased of J. J. Rice, the note so secured by the trust deed on the house and lot, and that they are the holders and owners of the same, and that the same is unpaid, and a lien on said property. That T. D. & Co., obtained a judgment on 25th of September, 1867, against Adair, Isom & Co., and had this house and lot sold on the 16th of March, 1868, when Gillenwaters and Haynie, became the purchasers at the sheriff's sale, Haynie being the agent of complainants, for $700.00, Haynie taking Gillenwaters into joint possession with him, (they being partners in trade), and that they hold the property adversely to complainants; that G. & H. had notice of the fact, that complainants had possession, and that Haynie was their agent; that some one unknown to complainants, on the 1st of January, 1868, entered satisfaction on the trust deed, in the name of J. J. Rice. The bill charges that this was done fraudulently, and *ante* dated. That J. F. Arnold was a practicing attorney, and represented the plaintiffs in the judgment, under which the sheriff's sale was made, if in fact there ever was any such judgments rendered, (which is not admitted); that Arnold refused to act further as trustee, or to execute the trust, regarding the transfer of the note to complainants as a payment, and that he has confederated with others to defraud complainants; that Haynie's acts were in violation of his duty as agent, and a fraud on complainants; charges combination and confederacy between Arnold, Gillenwaters and Haynie, to cheat and defraud complainants, and deprive them of their rights, etc.

The answer of Gillenwaters, denies on information and belief, and says he is informed and believes that Haynie was put in possession by Adair & Isom.

Haynie in his answer, denies that he was put in possession by the complainants, but says he was put in possession of the property, by Adair & Isom, prior to their sale to complainants, and has remained in possession ever since, continuously. Haynie further answering says, " he admits, that some time in the month of December, 1867, a gentleman, representing himself as the agent of complainants, called upon him and informed him, that complainants had recently purchased the house and lot from Adair & Isom, and paid them in a debt of $800.00, that Adair & Isom owed them, and paid in cash $400.00 therefor, and said he desired to look at the house, and requested him to let him have the keys to open the doors of said house, and after he had examined the same, returned the said keys to defendant and requested him to rent said house out, under their pretended purchase of the 14th of December, 1867, but he did not rent the same to any one for complainants, nor has he acted as their agent in the matter, further than above stated, if that amounts to agency."

Adair & Isom admits that the note has never been paid by them, and state, upon information and belief, that it has never been paid by any one, and that the trust deed is a subsisting lien.

Arnold answering, admits that complainants paid the money to Rice, but denies that it was an assignment, but treats it as a payment. Isom filed a separate answer, setting up his discharge in bankruptcy.

Defendants deny all the allegations of fraud.

Witness Buckner testifies, "it was agreed, (that is, Miller, Gardner & Co., and Adair & Isom agreed) that we were to pay Mr. Rice, and he was to transfer to us, all the advantages he had by virtue of the deed of trust; we had no written agreement, we were to have all the benefits and

privileges Mr. Rice had in said deed of trust, by agreement with Adair & Isom at the time of our purchase of the property."

Rice testifies substantially the same, and says he never authorized any one to enter satisfaction on the trust deed.

Witness Haynie testifies, that complainant authorized him to sell the property or to rent it out. He received a proposition from Messrs. Dodson & Fleming, to trade Arkansas lands for it, so informed them and they declined the proposition, notified them when I saw the property advertised by the sheriff.

The court decreed, that E. C. Gillenwaters pay complainants $265.10, within twenty days; that the trust deed be canceled, appointed R. J. Fleming commissioner, to convey to complainants a half interest in the property, and to Gillenwaters the other half.

From which decree both parties appeal to this court.
The following is assigned for error :

1. The court erred in decreeing that there were judgments rendered on the 25th of September, 1867, that were valid subsisting liens on the property in controversy.

2. The court erred in decreeing an undivided half interest in said property to defendant, E. C. Gillenwaters.

3. The court erred in not decreeing the sheriff's deed, mentioned in the pleadings, canceled; and in not vesting the title of all the defendants to said property in Miller, Gardner & Co.

4. The court erred in not granting in full the prayer of complainants.

CONRTRA.

1. The court erred in rendering the decree of 29th of May, 1871, appealed from, and in not dismissing the bill.

*G. L. Potter*, for Miller, Gardner & Co.

*G. P. Curlee*, on same side.

*W. L. Nugent*, for E. C. Gillenwaters :

1. Long prior to the filing of the bill to foreclose the trust deed, Adair & Isom had been adjudicated and discharged as

bankrupts. The district court of the United States had exclusive jurisdiction of the bankrupts, their estate, and all parties and questions connected therewith. The same objection could be urged to the execution title of Gillenwaters, if there had not been a levy of the amount prior to the filing of the petition in bankruptcy. Bump's Bankruptcy, pp. 138, *et. seq.;* Jones v. Leach, *et. al.*, 1 B. R., 165; Shanon v. Howell, 40 Geo., 257; Fehley v. Barr, 66 Penn., 196. It is no answer to say that Miller, Gardner & Co., had purchased the property from Adair & Isom, prior to their adjudication as bankrupts. The conveyance to them is invalid, because made within the time prohibited by the bankrupt act, and to parties who either knew, or had reasonable cause to believe that the grantors in the deed were insolvent. The deed, too, was given for an antecedent debt due Miller, Gardner & Co., and while it may be admitted, that they assumed and paid the Dugan & Rice debts; (also antecedent liabilities), the admission is fatal to their standing in court. They were evidently controlled in the whole matter by a desire to secure their old debt, for this was the burden of their conversation with Haynie, and others. Hubbard v. Allain Works, 7 Blatch., 284; Patten, *et. al.* v. Coggeshall, 4 B. R., 19; In *re.* Drummond, 1 B. R., 10; In *re.* Sutherland, 1 B. R., 140; In *re.* Wells, 3 B. R., 95; Curran v. Monger, 6 B. R., 33; Hardy v. Clark, 3 B. R., 99.

2. In no event, however, would Miller, Gardner & Co., be entitled to the benefit of the trust deed. The debt secured thereby had been fairly and fully paid as the proof shows, and the deed necessarily ceased to be operative for any purpose; it became *void* by its own terms. It is a general rule of law, subject of course to exceptions, that only an actual payment, or an express release, will extinguish a mortgage, when equity requires its continuance, and that the whole question turns upon the intention of the parties at the time. Ladd v. Wiggin, 36 N. H., 521; Champney v. Coope, 34 Barb., 339. The true text in this case is thus stated by Chief Justice Shaw: "Whether a given transaction shall be

held in legal effect to operate as payment and discharge which extinguishes the mortgage, or as an assignment which preserves and keeps it on foot; does not so much depend upon the form of words used, as upon the relation subsisting between the parties advancing the money, and the party executing the transfer or release, and their relative duties. If the money is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the mortgage and relieve the mortgaged premises of the lien, a duty in the performance of which, others had an interest, it shall be held to be a release, and not an assignment, although in form it purports to be an assignment. When no such controlling obligation or duty exists, such an assignment shall be held to constitute an extinguishment, or an assignment, according to the intent of the parties." Brown v. Laphan, 3 Cush., 554; Cutler v. Lincoln, ib., 124; Vanderkemp v. Sheehan, 11 Paige, 28. Miller, Gardner & Co. agreed to pay the mortgage debt as part of the consideration of the conveyance from Adair & Isom to them, and upon them rested the *controlling obligation* to discharge the mortgage. There is no question of intent involved, and the subsequent payment of the Rice debt, must necessarily operate as a discharge of the mortgage. Russell v. Piston, 3 Seld., 171; Wyman v. Hooper, 2 Gray, 141.

Miller, Gardner & Co., bought the house and lot from Adair & Isom, for $1200; $800 of which was paid in the debts due to them and Dugan, by Adair & Isom, and $400 of which were applied, as they insist, to the purchase of the mortgage debt due John J. Rice. So that the money paid to Rice was really the money of Adair & Isom, due to them by the complainants, on account of the purchase as stated. If the debtors' money was used in the payment of their debt, it is difficult to conceive that there could in equity be anything like an *assignment* of the mortgage. Kinley v. Hill, 4 Watts & S., 526; Defendall v. Malone, 25 Ala., 270; Mead v. York, 2 Seld., 449; 21 Pick., 230.

3. Prior to the purchase by Gillenwaters, the mortgage was actually released upon the margin of the record thereof.

This release is dated January 1, 1868, and the property was sold under execution on the 16th day of March, 1868. The letter from Rice to Arnold, expressly requested him to discharge and release the trust deed, the same having been paid and satisfied. Arnold, the trustee, was very reasonably ·induced to believe that the debt had been paid. And while the answer of Arnold leaves the exact date of the entry of satisfaction doubtful, enough appears to show that it was done on, or about the 1st of January, 1868, instead of 1869. Rice's letter is dated January 27, 1868, and addressed to Arnold, at Rienzi. At the time Arnold received this letter he had the judgment against Adair & Isom, and subsequently sued out execution, doubtless upon the faith of the letter. There was every reason then, for the entrys being made at an early day. Gillenwaters acted under Arnold's advice in making the purchase, and would certainly not have paid $700 for the property, until assurance and notice of the payment of the mortgage debt; without *actual* notice to impeach or explain Rice's letter. Gillenwaters ought to be protected in his purchase. Bowman v. Manter, 33 N. H., 530; Hadlock v. Bulfinsh, 31 Maine, 256; Rev. Code, 1857. p. 308, art. 14. The endorsement made by Rice on the note when it was delivered to Miller, Gardner & Co., shows that all parties contemplated payment of the mortgage debt, and that the alleged purchase was a pure afterthought.

4. The final decree is objectionable in several particulars. Haynie was the agent of Miller, Gardner & Co., in possession at the time the property was sold under execution, but there is nothing to show that Gillenwaters was aware of the fact. Haynie had conveyed all his interest in the property to Gillenwaters prior to the commencement of this suit, and was not a proper party defendant. Gillenwaters had title to, and claimed the whole property, and there can be no question as to the impropriety of declaring Haynie a trustee for his principal, and of putting the rents of the property against the purchase money owing Gillenwaters. Besides, there is no evidence of any contract of lease between

the complainants and Haynie, who was their mere *agent* in possession, and not their *tenant*. The court strips Gillenwaters of property, fairly purchased from Haynie, and declares that Haynie purchased at execution sale, as trustee for Miller, Gardner & Co., and is entitled to nothing, because his use of the property amply compensated him. Haynie could not claim compensation for the money expended in buying up the execution title unless the purchase was necessary, and, if necessary, Gillenwaters' title to one-half of the property was good.

*Curlee & Stanley,* for appellees :

Miller, Gardner & Co. paid to the mortgagee, (Rice) the full amount of the mortgage debt.

Courts will hold a mortgage satisfied, or keep it alive, according to the interest of the party who pays out his money. Gibson v. Crehove, 5th Pick., 151 ; Gibson v. Crehove, 3rd Pick., 475 ; Cook v. Tombs, 36th Miss., 690 ; Gardner v. Aster, 3 Johns. Ch. 53 ; James v. Johnson, 6th Johns. Ch. 423 ; 1 Phillips Ev., §§ 608–9 ; James v. Money, 2 Cowen, 218 ; Forbes v. Moffat, 18 Vesey, 390 ; Brown v. Lapham, 3 Cushing, 554.

If it is necessary, in order to promote substantial justice, the court will keep it alive, though the party paying the money may have had satisfaction of the mortgage entered on record. Popkin v. Bumstead, 8 Mass., 491.

The letter from Rice, the beneficiary in the trust deed, to Arnold, the trustee, as set up in Arnold's answer, was not introduced in evidence, and as it was affirmative matter, set up in the answer and not proved, it cannot be regarded, but, even if it had been proved, it would not injure complainants, for that letter itself shows, as the answer sets up, that Rice had no longer any authority in the premises, *having parted with his entire interest in the same to Miller, Gardner & Co.*

Afterwards the property in controversy is sold under executions founded on judgments which the trustee (Arnold)

is controlling as attorney at law for plaintiffs.    At the sale, Arnold is the purchaser, and, after the sale, substitutes Gillenwaters & Haynie as the purchasers.

Complainants allege in their bill that Haynie was at that time their agent for this property. Haynie denies it in his answer, but in his deposition he admits that he was at that time the agent of the complainants, holding the property for them, for the purpose of renting it; that he had received the keys of the house from complainants, etc.

That any title that Haynie might obtain under such circumstances would enure to complainants, there can be no question.    4 Kent's Com., * 371, note c.; Ringo v. Binns, 10 Peters, 269.

But on what terms shall the defendants be required to give up this property? And are they entitled to have the money paid out by them, at the sheriff's sale, refunded? are more difficult questions.

"An agent is not entitled to any indemnity for his unauthorized act, or speculation." Story's Agency, § 192.

"The law requires the utmost degree of good faith in transactions between parties standing in a peculiar relation, or fiduciary capacity between each other; as, for instance, in the relation of client and attorney, physician and patient, principal and agent."

This principle is one of general public policy.    2 Kent, 483, note f.

A trustee or agent is entitled to be refunded for money *necessarily* expended in the performance of his duty. Perry on Trusts, § 910.

In Balsh v. Hyman, 2 Pere Williams Rep., 455. The Lord Chancellor says that, "where the trustee has honestly, fairly, and without any possibility of being gainer, laid down any money by which the *cestui que trust* is discharged from being liable for the whole money lent, or from a plain and great hazard of being so, the trustee ought to be repaid."    See also Jones v. Dawson, 19 Ala., 675.

*But,* to enable trustees to enforce their claims for expenses

against a *cestui que trust, they must have proceeded, strictly within the limits of their power, unless they have the express or implied promise of the cestui que trust to indemnify them.*" Perry on Trusts, § 909.

. In Ringo v. Binns, 10 Peters, 269, the court decrees title out of the agent, but does not, so far as the decree shows, return the agent the large outlays of money made by him in procuring title for himself. "An agent is not entitled to any indemnity for his unauthorized act or speculation." Story on Agency, § 192.

These authorities very clearly settle the doctrine, we think, that where an agent or trustee, or any one acting in a fiduciary capacity, acts without authority, though in good faith, he is not entitled to any remuneration for such unauthorized outlays and expenditures; though, in such cases, where the agent or trustee acts in good faith, the courts will sometimes imply authority where the agent shows that the expenditure was clearly and manifestly for the good of his principal. But in all cases the good faith and honest purpose to make the outlay for the benefit of the principal is a prerequisite. Where an agent has acted in bad faith in regard to the property of his principal, the courts go on the presumption that if the agent does not get full justice *it is because of his own fault.* 15 Vesey Jr., 441. "It is a maxim which, on every principle of morals, is entitled to great regard, that between contending parties, the wrong-doer is the person who ought to suffer."

Gillenwaters, the partner of Haynie, stands in no better attitude than does Haynie. The purchase was made by the firm of Gillenwaters & Haynie. Notice to one partner is notice to all.

As to the allegation of defendant, Arnold, that the deed from Adair & Isom, to complainants, was made in fraud of creditors, it is sufficient to say that defendant introduced no proof to sustain this allegation; but, on the contrary, Buckner, a member of the firm of Miller, Gardner & Co., testifies that he made all the negotiations; that they were

made in the best of faith, and that he and his firm did not know but that Adair & Isom were perfectly solvent, and able to pay all their debts in full, and that there was a good and valuable consideration paid in good faith for said property.

It would seem to be an unnecessary labor to notice defendant, Arnold's, allegation of the bankruptcy of Adair & Isom. Whatever virtue there might be in this defense, Arnold, the trustee in the deed of trust made about seven months before the bankruptcy, could obtain no benefit thereby. But there is not a particle of proof to sustain the allegation of bankruptcy. If it is a defense, it should be proved like any other defense. But, even if there was proof of the bankruptcy, it would not invalidate a deed unless the grantees had reasonable cause to believe the grantors insolvent, and that the transfer was a fraud, etc. Bump on Bankruptcy, note B to § 35 ; note F to § 39.

SIMRALL, J., delivered the opinion of the court:

This case is here upon appeal and cross appeal. In August, 1867, Adair & Isom conveyed in trust, to Jno. F. Arnold, a lot of ground in the town of Corinth, to secure a note of $470.00, payable to John J. Rice. Miller, Gardner & Co., on the 14th December, 1867, purchased the property from Adair & Isom, and received the deed. A few days after their purchase, as alleged in the bill, they appointed E. F. Haynie an agent, and let him into the possession of the premises. Miller, Gardner & Co. further allege that on the 29th of January, 1868, they bought from Rice the note aforesaid, secured by the deed of trust, which was transferred and delivered to them, which has never been paid. The answers of Gillenwaters & Haynie, and of Arnold, make an affirmative defense against Miller, Gardner & Co., by setting up a title to the lot, acquired at Sheriff's sale, made 16th March, 1868, under judgments secured 25th September, 1867, in favor of Trabue, Davis & Co., and H. Buckhart, against Adair & Isom.

The controversy is between Miller, Gardner & Co., as purchasers of the equity of redemption from Adair & Isom, the 14th of December, 1867, and claiming, as assignees of Rice, of the note of $470.00, secured by the trust deed of August, 1867, and Gillenwaters & Haynie, purchasers at Sheriff's sale, under the judgment. It becomes necessary, to a correct solution of these conflicting claims to the property, to examine the complexion, which the testimony gives, to the peculiar circumstances out of which they respectively originated. It is important to note the dates of the several occurrences. The deed of trust (2d August, 1867), is older than the judgment (September, 1867). The purchase of the equity of redemption is junior to the judgment.

Miller, Gardner & Co., in their original bill, insist that Gillenwaters & Haynie acquired no title as against complainants by their purchase at the judicial sale—(the reasons assigned will be hereafter considered). In the amended bill, the complainants pray that, if the Sheriff's sale shall not be canceled, then Gillenwaters & Haynie should be required to account for rents of the property; and after crediting that sum, when ascertained, upon the $700 paid on execution sale, the complainants, upon payment of the balance, should have the benefit of their title.

Gillenwaters & Haynie, in their answers, insist that the complainants did not take the note from Rice as assignee, but that they paid and satisfied the debt, that the endorsement on the margin of the record of the deed is conclusive that the incumbrance had been discharged. The endorsement is in these words: Satisfied in full by order of Jno. J. Rice, January 1st, 1868. (It is agreed that, the true date is 1869.) There is no signature; nor is the authorization attached; it was actually placed upon the record more than a year *after the Sheriff's sale*, so that when that sale was made the deed in trust appeared as a subsisting incumbrance on the property.

The consideration paid, and agreed to be paid by Miller,

Gardner & Co. to Adair & Isom, for the property, was the satisfaction of a debt of five or six hundred dollars, owing by Adair & Isom to them, to. pay their debt to one Dixon, also to take up the debt to Rice, in this wise, (as stated by Buckner in his deposition,) "we were to pay Mr. Rice, and he was to transfer to us all the advantages he had by virtue of the deed of trust." The whole consideration amounting to twelve hundred dollars. The terms of the endorsement of Rice's note is as follows: "This is to certify that the within note has been duly satisfied, and the mortgage on house and lot in Corinth, Mississippi, for security of same, is hereby silenced and discharged; also that all interest, real and imaginary, that I may have had in said property, is released *in toto* to the Messrs. Miller, Gardner & Co., purchasers of said house and lot from makers of this note. I furthermore deny all connection with, or responsibility in the premises. January 29, 1868.

(Signed)                                            J. J. RICE."

Rice, in his deposition, states with emphasis, that he transferred the note, to Miller, Gardner & Co., substituting them to all the rights which he had to the trust deed. That such was his contract with them, and whatever form it may have been put in, his intention was to substitute them to the note and security, just as they were in his hands.

Was this an assignment or payment of the debt to Rice? The general principles will be found on an analysis of the cases to be, that whether a given transaction shall operate as a payment which satisfies and discharges the mortgage, or as an assignment, which keeps it alive, does not depend so much upon the language used, discription of the act done, as upon the relations subsisting, or that spring up, between the party advancing the money, and others, who had or have acquired interests in respect to the property.

If the mortgagee himself, or his legal representative, pays off the debt, no purpose generally can be considered by keeping the mortgage on foot. So, too, if others have come under a duty, as by contract to pay off the mortgage, in

the performance of which other persons have an interest; although an assignment in terms be made, it should be held to be a release, and not an assignment. Undoubtedly the general rule is, that if the legal and equitable title was united in the same person, the equitable title is also his, as when the legal title is taken by mortgage, and then by his own act the mortgagee acquires the equity of redemption; the incumbrance is extinguished. Commonly, there is no motive to keep up the burden, and continue the relation of creditor and debtor, when both relations are personated by the same individual.

In equity the merger of the two estates depend upon the intention, express or implied, and upon the purposes of justice. If the interest of the *cestue qui trust* require the estate to be kept separate, and justice is promoted thereby, a court of equity will keep them distinct. Forbes v. Moffatt: Moffatt v. Hammond, 18 Vesey Rep. 384, note a. In the course of the judgment, Sir Wm. Grant used this language; " Upon looking into all the cases, in which charges have been held to merge, I find nothing which shows that it was not perfectly indifferent to the party in whom the interests had united, whether the charge should or should not subsist, then it always sinks. In that case the testator devised his whole estate to J. M., who was also mortgagee—the estate being also subject to another mortgage—the charge in favor of J. M. was kept alive, because it would be to his interest so to treat it, in view of the conflicting rights of the other incumbrances. A strong case illustrative of the principle is Popin v. Bumstead, 8 Mass. Rep. 491. The administrator sold the equity of redemption, under a license of the proper court, which was purchased by Wheetock, who conveyed to Bumstead, who paid to the mortgagee the whole sum due, who entered satisfaction upon the record of the deed. After this had been done the widow of the mortgagee applied for dower. The court, however, treated the claim as though the mortgage was outstanding and unsatisfied. The object of the purchaser in paying off the incumbrance was to perfect

his estate.   That ought not to be seized upon by the widow to give her a better right than she had before.   In an analogous case, Gibson v. Crehove, 3 Pick. 482, speaking of the purchaser of a right to redeem, who acquires the mortgage, the court say: " It shall, or shall not operate as an extinguishment of the mortgage, according to the interest of the party."   In that case, the purchaser had entered into covenant to pay the mortgage debt, and, moreover, had sold and conveyed the property to a third person.   Neither of these facts precluded him from insisting upon the mortgage.   In Compton v. Oxendon, 2 Vesey jr. 264. Lord Thurlow, addressing himself to the question of intent, as to whether the estate shall stand with the incumbrance upon it, or be discharged of it, referred to the fact whether it would be more beneficial to the person entitled to the charge, to let it remain; as having a controlling influence in deciding the " implied intent."

Such are the doctrines of a court of equity, where both estates are united in the same person.   In the case under consideration, there would not obtain a legal merger strictly; for Miller, Gardner & Co. were owners of the right of redemption; the dry legal title outstanding in Arnold, the trustee; substantially, however, the deed in trust was but a charge upon the estate, capable of being redeemed.   There is, therefore, less technical difficulty in the way.   In continuing this incumbrance, if it shall be necessary to protect the estate of Miller, Gardner & Co., consistently with an intention, express or implied so to do, we think that the principles to which we have referred, growing up in cases where there has been a concentration of both rights in the same individual, apply in reason to charges created by deeds in trust, like that presented here.   It is proved in the deposition of Buckner, that Adair & Isom consented that the complainants might take up the note, with the benefit of the security incident to it.   It is proved by Rice, that the transaction with him was an assignment of the note and security, and not a payment of the debt.   The law guage used by Rice in passing the note to the complainants, is equivocal and uncertain,

indicating that Rice was not conversant with the exact use and import of words. In cases of doubtful meaning it is entirely competent to accept proof of the relations of the parties to each other and the subject matter, and of surrounding circumstances, as aids to the interpretation of the language employed, so as to reach the intent. Whallow v. Kaufman, 19 John. 107; Sumner v. Williams, 8 Mass. 214. Taking the entire written words endorsed by Rice on the note, we think his fair meaning was, that as to him the note was paid and the security satisfied; but as to Miller, Gardner & Co. "all his interest is released to them, they being purchasers of the house and lot, from the makers of the note." This construction comports with the express intent of the complainants, when they agreed with Adair & Isom to take up the debt, and also with the express intent of Rice and themselves when they negotiated with him. The caution of Miller, Gardner & Co., to preserve the charge upon the property, shows that they wished to retain the incumbrance as a support and protection of their title. It is manifest that without that aid, the title would be in a most precarious condition. No case, perhaps, can be found in the books, where it is more essential to the interest of the purchaser of the equity of redemption, that the charge shall remain and not be extinguished.

We conclude, therefore, that the transaction with Rice, should be treated as an assignment, and that the complainants may avail of whatever advantage it may afford, against Gillenwaters & Haynie, the purchasers, at sheriff's sale.

The judgment, being older than the sale to Miller, Gardner & Co., was a lien upon the interest conveyed by Adair & Isom to them, but was subordinate to the incumbrance of the deed in trust. The sheriff's sale would therefore pass the equity of redemption, and would leave to the complainants, simply a right to enforce the charge upon the land, for payment of the note of $470.00. This would be the ordinary result, and would be so in this case unless the purchasers from the sheriff stood in such relation to the complainants,

as forbids that they should enjoy any legal advantage they may have obtained over the complainants.

It is averred in the bill, and stated by Buckner, (one of the complainants,) in his testimony, that immediately after the purchase, (which was negotiated by him,) from Adair & Isom, Haynie the defendant was constituted agent to look after the property, rent it out, etc. The agency was accepted; and Haynie went into possession and control, for complainants who were residents of Evansville, Indiana. Haynie, in his answer, denies the agency in toto; but when examined as a witness, he admitted his appointment, acceptance and conduct as such.

The purchase of Gillenwaters & Haynie, (partners in business,) was made whilst Haynie was agent, and in that right controlling the property. In his answer, Haynie states how the purchase was made; he and Gillenwaters had sent R. J. Fleming, as agent, to attend the sale, and buy in the property. It was, however, bid off to J. F. Arnold, who consented to substitute them to his bid, whereupon the sheriff made the deed to them. Arnold in his answer, gives substantially the same account, with the further fact, that Fleming was his competitor in bidding. It is also developed that Gillenwaters & Haynie owned other real estate in Corinth, in copartnership; and that after the sale, Gillenwaters occupied the premises. Haynie, in his testimony, says that he never repudiated his agency until after the sheriff's sale. Gillenwaters must have been let into possession by Haynie; but the deed was made to them by their firm name. That fact alone, might suffice, but coupled with the other surroundings, induces the conviction that Gillenwaters knew the relations of his partner, Haynie, to the complainants. It is in proof, that Haynie was taken into counsel by the complainants, as to the purchase, and advised them to make it. A court of equity exacts fidelity and loyalty from agents, and fiduciaries of every sort to their principals, and will strip them of all advantages obtained by a breach of trust and confidence. It will clothe them with the character and

responsibilities of trustees, as respects dealings and purchases which involve a breach of good faith; and will turn over, upon just terms, the fruits of such transactions to the principal.

We are of opinion, therefore, that Miller, Gardner & Co., may, if they choose, elect to treat this purchase as made for them; as the judgment under which Gillenwaters & Haynie bought, was a lien upon the equity of redemption, which was discharged by their purchase. The complainants upon refunding the $700.00, less the value of the rents of the property, upon an account taken, should be intrusted with this title, or the complainants, if they prefer, should have a foreclosure of the deed in trust, so as to be paid the debt thereby secured, if they prefer that mode of relief.

We do not intend to advance the proposition that an agent may not become the *bona fide* purchaser of the property, at public judicial sale. But there are such, and so many badges of equivocation and bad faith connected with this purchase, that it ought not to stand against the complainants. There was no difficulty in the way of giving them notice. Although Haynie says he wrote to the complainants about it, Buckner, in his interview with him, after the sale, complaining of his delinquencies, taxed the failure of notice of the sale, as the greatest of his acts of unfaithfulness.

We attach no importance to the indorsement of satisfaction on the record of the trust deed, inasmuch as it was made long after the Sheriff's sale, and would not have misled bidders and purchasers, and could not prejudice Gillenwaters & Haynie, or influence them as bidders and purchasers. At the time of the sale, the incumbrance appeared to be open and unsatisfied. Nor has the defendant, Arnold, sustained the imputation made upon the conveyance to the complainants by Adair & Isom, as a fraudulent assignment, within the purview and intendment of the bankrupt law. The uniform construction put upon the law by the Federal judiciary is, that the purchaser and assignee must participate in the fraud. The latter must know the pending insol-

vency of his debtor, and must be aware that he is obtaining a preference over other creditors. The only testimony on the point is, that Miller, Gardner & Co. were acting in good faith, and were not aware that Adair & Isom were insolvent.

The decree is reversed, and cause remanded for further proceedings, in accordance with this opinion.